**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| SHENZHEN BITLAND INFORMATION TECHNOLOGY CO., LTD.,<br>Plaintiff<br><br>v.<br><br>THE UNITED STATES, et al.<br>Defendants. | Before: M. Miller Baker, Judge<br><br>No. 26-3083 |

**DEFENDANT'S MOTION TO DISMISS**

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

CLAUDIA BURKE
Deputy Director

OLIVER J. MCDONALD
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
(202) 305-0168
Oliver.J.McDonald@usdoj.gov

## TABLE OF CONTENTS


INTRODUCTION ........ 1

BACKGROUND ........ 3

A. The Uyghur Forced Labor Prevention Act ........ 3

B. Shenzhen Bitland And Its Subsidiary Hefei Bitland ........ 4

C. Plaintiff's Complaint ........ 9

STANDARDS OF REVIEW ........ 10

ARGUMENT ........ 11

I. The Complaint Must Be Dismissed For Lack of Standing ........ 12

A. Shenzhen Bitland's economic and reputational injuries are speculative ........ 12

B. Shenzhen Bitland does not meet the requirements to advance a procedural injury ........ 20

II. Alternatively, the Complaint Must Be Dismissed for Failure to State a Claim, or at Minimum, Count Two Should Be Dismissed as Unripe ........ 21

A. The Complaint must be dismissed for failure to state a claim ........ 22

B. Count Two is not ripe for review ........ 24

CONCLUSION ........ 27

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abbot Lab'ys v. Gardner*,
387 U.S. 136 (1967) ....................................................................27

*Am. Bankers Ass'n v. United States*,
932 F.3d 1375 (Fed. Cir. 2019)....................................................11

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................11, 22

*Bell v. New Jersey*,
461 U.S. 773 (1983) ....................................................................24

*Caraco Pharm. Lab'ys, Ltd. v. Forest Lab'ys, Inc.*,
527 F.3d 1278 (Fed. Cir. 2008)..............................................24, 27

*Ctr. For Law & Educ. v. Dep't of Educ.*,
396 F.3d 1152 (D.C. Cir. 2005) ...................................................20

*Doc Society v. Rubio*,
141 F.4th 1273 (D.C. Cir. 2025)...................................................18

*Duke Power Co. v. Carolina Env't Study Grp., Inc.*,
438 U.S. 59 (1978) ......................................................................26

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) ................................................................*passim*

*Food & Water Watch, Inc. v. Vilsack*,
808 F.3d 905 (D.C. Cir. 2015) ...............................................11, 16

*FTC v. Standard Oil Co. of Calif.*,
449 U.S. 232 (1980) ....................................................................26

*Gardner v. Toilet Goods Ass'n*,
387 U.S. 167 (1967) ....................................................................27

*Houston Shutters LLC v. United States*,
816 F. Supp. 3d 1349 (Ct. Int'l Trade 2026)..............................10, 11

*McKart v. United States*,
395 U.S. 185 (1969) ........................................................................26

*Nat'l Park Hosp. Ass'n v. Dep't of Interior*,
538 U.S. 803 (2003) ...................................................................25, 26

*New LifeCare Hosps. Of N.C., LLC v. Becerra*,
7 F.4th 1215 (D.C. Cir. 2021) ...........................................................26

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) ..........................................................................22

*Odyssey Logistics and Tech. Corp. v. Iancu*,
959 F.3d 1104 (Fed. Cir. 2020) ..........................................................23

*Palakuru v. Renaud*,
521 F. Supp. 3d 46 (D.D.C. 2021) ......................................................23

*Sierra Club v. Thomas*,
929 F.2d 783 (D.C. Cir. 1987) ...........................................................24

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) ...................................................................20, 21

*Sys. Application & Techs., Inc. v. United States*,
691 F.3d 1374 (Fed. Cir. 2012) ....................................................25, 26

*Yavari v. Pompeo*,
No. 2:19-cv-2524, 2019 WL 6720995 (C.D. Cal. Oct. 10, 2019) .....23, 24

**Statutes**

5 U.S.C. §
706(1) .............................................................................................22
706(2) .............................................................................................22

19 U.S.C. §
1307 ............................................................................................3, 4
4681 ..............................................................................................4

**Rules**

Ct. Int'l Trade R. 12(b)(1) .................................................. 1, 11

**Administrative Determinations**

Exec. Order 13923, *Establishment of the Forced Labor Enforcement Task Force Under Section 741 of the United States-Mexico-Canada Agreement Implementation Act,*
85 Fed. Reg. 30,587 (May 15, 2020) .................................................. 4

*Notice on the Addition of Entities to the Uyghur Forced Labor Prevention Act Entity List*,
87 Fed. Reg. 47,777 (Aug. 4, 2022) .................................................. 6

**Other Authorities**

CBP, *DHS Cracks Down on Goods Produced by China's State-Sponsored Forced Labor*, https://perma.cc/6ARN-LMFA .................................. 6, 19

U.S. Customs and Border Protection (CBP), *Withhold Release Orders & Findings Dashboard*,
https://www.cbp.gov/newsroom/stats/trade/withhold-release-orders-findings-dashboard (last accessed October 4, 2026) .............................. 5

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

| | |
|---|---|
| SHENZHEN BITLAND INFORMATION TECHNOLOGY CO., LTD.,<br>Plaintiff<br><br>v.<br><br>THE UNITED STATES, et al.,<br>Defendants. | Before: M. Miller Baker, Judge<br><br>No. 26-3083 |

## MOTION TO DISMISS

Pursuant to Court of International Trade Rule 12(b)(1), defendants, the United States, et al., hereby move to dismiss the complaint for lack of jurisdiction.

## INTRODUCTION

The Forced Labor Enforcement Task Force (FLETF) is responsible for maintaining the Uyghur Forced Labor Prevention Act (UFLPA) Entity List. It may add an entity to that list if, for example, it finds that the entity has been involved in forced labor in the Xinjiang Uyghur Autonomous Region of China.

Plaintiff Shenzhen Bitland Information Technology Co., Ltd. (Shenzhen Bitland) is not on the UFLPA Entity List, and never has been. It instead has asked the FLETF to remove what it alleges is a now-years-defunct subsidiary, Hefei Bitland, from the list. The FLETF

is actively considering Shenzhen Bitland's request and anticipates issuing a decision by the end of this calendar year. Though the FLETF received additional information from Shenzhen Bitland only months ago, Shenzhen Bitland seeks an order directing the FLETF to remove Hefei Bitland before the FLETF has even had the opportunity to complete its work and issue a final decision.

Shenzhen Bitland's complaint should be dismissed. While Shenzhen Bitland claims that the defunct subsidiary being on the list has caused it economic, reputational, and procedural injury, Shenzhen Bitland does not even allege a prospective economic injury that would support the prospective relief it requests, and none of its claimed injuries are plausibly traceable to the UFLPA Entity List or redressable by a favorable decision. Rather, other factors—chief among them the Hefei Bitland's still-active Withhold Release Order—bear on Shenzhen Bitland's claimed injuries, and removing Hefei Bitland from the UFLPA Entity List would thus fail to redress them. Both counts of the Complaint should therefore be dismissed for lack of standing.

Alternatively, Count Two must be dismissed because it fails to challenge a final agency action. Indeed, Shenzhen Bitland candidly

acknowledges that the FLETF has not yet issued a decision on its request. And because the FLETF is actively considering Shenzhen Bitland's request and anticipates issuing a decision by the end of this calendar year, it has not constructively denied Shenzhen Bitland's request. In the alternative, Count Two should be dismissed as unripe because the Court would benefit from further factual development of the issues presented and awaiting the FLETF's final decision would not cause Shenzhen Bitland undue hardship.

## BACKGROUND

### A. The Uyghur Forced Labor Prevention Act

The UFLPA, P.L. 117-78 (Dec. 23, 2021), was enacted "to strengthen the prohibition against the importation of goods made with forced labor, including by ensuring that the Government of the People's Republic of China does not undermine the effective enforcement of section 307 of the Tariff Act of 1930 (19 U.S.C. 1307)." *See* UFLPA, Section 1(1) (Statement of Policy). Specifically, it was enacted "[t]o ensure that goods made with forced labor in the Xinjiang Uyghur Autonomous Region [(Xinjiang or XUAR)] of the [PRC] do not enter the United States market . . . ." UFLPA, Preamble.

Among other things, the UFLPA requires the FLETF to create and update the UFLPA Entity List, a list of entities that meet specified criteria related to certain conduct in the XUAR, including the use of forced labor. *See* UFLPA, Section 2(d)(2)(B), (e)(2). The FLETF is composed of senior officials from the Departments of Homeland Security, State, Treasury, Justice, Labor, and Commerce, alongside the Office of the U.S. Trade Representative. It has a variety of responsibilities beyond maintaining the UFLPA Entity List and is generally tasked with "monitor[ing] United States enforcement of the prohibition under section 307 of the Tariff Act of 1930 (19 U.S.C. 1307)." *See* 19 U.S.C. § 4681; Exec. Order 13923, *Establishment of the Forced Labor Enforcement Task Force Under Section 741 of the United States-Mexico-Canada Agreement Implementation Act,* 85 Fed. Reg. 30,587 (May 15, 2020).

**B. Shenzhen Bitland And Its Subsidiary Hefei Bitland**

Shenzhen Bitland is a company located in Shenzhen, China, which manufactures and sells computer and peripheral equipment. ECF No. 2 (Compl.) ¶ 12. It operates two manufacturing centers where it produces electronics "tailored to their customers' technical

specifications." *Id.* ¶ 36. In 2010, it founded a subsidiary, Hefei Bitland, which employed 2,000 workers including 301 workers from the XUAR. *Id.* ¶ 37. Shenzhen Bitland states that, in 2019, its companies were collectively doing $500 million worth of business with the United States market. *Id.* ¶ 80.

In July 2020, the Department of Commerce Bureau of Industry and Security (BIS) placed Hefei Bitland on its Entity List. *Id.* ¶ 39. Hefei Bitland "lost its major customer, Lenovo" shortly thereafter, shut down its production lines that month, stopped all manufacturing by August 2020, and laid off its employees in September of that year. *Id.* ¶ 44.

On September 14, 2020, CBP issued a Withhold Release Order (WRO) against Hefei Bitland. *Id.* ¶ 40. That order remains in place as of the date of this motion. *See* U.S. Customs and Border Protection (CBP), *Withhold Release Orders & Findings Dashboard*, https://www.cbp.gov/newsroom/stats/trade/withhold-release-orders-findings-dashboard (last accessed October 4, 2026) (Hefei Bitland WRO). In announcing the WRO, CBP noted that "[i]nformation reasonably indicates that Hefei Bitland uses both prison and forced

labor to produce electronics," and that it "identified forced labor indicators including abuse of vulnerability, restriction of movement, isolation, and intimidation and threats." CBP, *DHS Cracks Down on Goods Produced by China's State-Sponsored Forced Labor*, https://perma.cc/6ARN-LMFA. As that announcement explained, CBP would withhold release of computer parts made by Hefei Bitland in Anhui, China. *Id.*

Shenzhen Bitland alleges that, "as a result" of Hefei Bitland being placed on the "BIS Entity List" in July 2020, Shenzhen Bitland's business with the United States "came to a screeching halt." Compl. ¶ 80. According to Plaintiff, "[t]he inclusion of Hefei Bitland to the BIS Entity List since July 2020 has harmed Shenzhen Bitland's business;" "Hefei Bitland became non-operational in July 2020 shortly after the [BIS Entity] listing." Compl. ¶ 55. Congress subsequently enacted the UFLPA and, in June 2022, the FLETF listed Hefei Bitland on the UFLPA Entity List. *Id.* ¶¶ 27, 45; *see also Notice on the Addition of Entities to the Uyghur Forced Labor Prevention Act Entity List*, 87 Fed. Reg. 47,777 (Aug. 4, 2022). Subsequently, the CBP WRO Dashboard stated, with respect to the Hefei Bitland WRO: "Active–

Enforcement of WRO superseded by enforcement of UFLPA rebuttable presumption." Hefei Bitland WRO. Shenzhen Bitland alleges that Hefei Bitland "completed its formal deregistration" in December 2022 and is defunct. Compl. ¶ 44.

Shenzhen Bitland alleges that Hefei Bitland's placement on the UFLPA Entity List "immediately inflicted direct commercial, operational, and reputational harm on Shenzhen Bitland," "even though Shenzhen Bitland was not on the UFLPA Entity List or otherwise accused of wrongdoing." *Id.* ¶ 52. It has since sought to have Hefei Bitland removed from both the BIS and UFLPA Entity List. *See id.* ¶¶ 54–74. In October 2024, BIS removed Hefei Bitland from its Entity List. *Id.* ¶ 57. Shenzhen Bitland has since sought to "restore its commercial relationships" but "has been consistently unable to do so." *Id.* ¶ 81. Shenzhen Bitland alleges two examples of its attempts.

In one, Shenzhen Bitland alleges that an unnamed company, at an unspecified time after Hefei Bitland was removed from the BIS Entity List, "engaged" Shenzhen Bitland to "perform research and development work" for a new product and "express[ed] satisfaction" with its "research work." *Id.* ¶ 82. However, the customer "declined to

proceed" to "mass production" with Shenzhen Bitland, "citing internal regulatory requirements and [a] concern that Plaintiff's products will be detained or excluded from the United States." *Id.* In the other, Shenzhen Bitland alleges that another unnamed company invited Shenzhen Bitland to "discuss a new project" after Hefei Bitland was removed from the BIS Entity List. *Id.* ¶ 83. However, the unnamed company did not award Shenzhen Bitland the contract, "citing the UFLPA Entity List designation as the decisive barrier" and stating that it "feared detention of goods manufactured by a Bitland entity." *Id.* Shenzhen Bitland alleges that both companies "stated that" Hefei Bitland's continued presence on the UFLPA Entity List was "the sole barrier" to awarding Shenzhen Bitland a contract for manufacturing equipment for the U.S. market. *Id.* ¶ 84.

Shenzhen Bitland states that it has "every reason to believe" that its business will "restore to past levels" if Hefei Bitland is removed from the UFLPA Entity List. *Id.* ¶ 87. In the meantime, it alleges that it continues to incur "reputational harm" due to Hefei Bitland's presence on the list. *Id.* ¶ 88.

Shenzhen Bitland requested that Hefei Bitland be removed from the UFLPA Entity List on November 18, 2024, "offer[ing] to answer any questions and to meet with agency staff." *Id.* ¶ 59. On January 3, 2025, the FLETF attempted to take Shenzhen Bitland up on its offer to meet with agency staff, but Shenzhen Bitland turned the agency down. *Id.* ¶ 61. After deliberating on Shenzhen Bitland's request, the FLETF issued questions to Shenzhen Bitland on July 11, 2025; held a "listening session" on September 4, 2025; requested more information on December 22, 2025; and requested further information on May 7, 2026. *Id.* ¶¶ 65, 67–68, 72. Shenzhen Bitland provided the last set of answers on May21, 2026. *Id.* ¶ 73. It filed this complaint 22 days later, on June 12, 2026. *See id.*

Shenzhen Bitland's request that the FLETF remove Hefei Bitland from the UFLPA Entity List remains pending as of the filing of this motion. *See id.* ¶ 73. Shenzhen Bitland alleges that the delay in receiving a final decision causes it "procedural harm." *Id.* ¶ 79.

### C. Plaintiff's Complaint

Less than a month after answering the FLETF's most recent inquiries, plaintiff filed suit in this Court. *See* Compl. ¶ 73. Proceeding

under the Administrative Procedure Act, plaintiff alleges that the FLETF has unreasonably delayed acting on its request, that the inaction is a constructive denial of its request, and that the FLETF's constructive denial is arbitrary and capricious. *Id.* ¶¶ 83–103. Shenzhen Bitland does not seek an order compelling the FLETF to issue a final decision, instead asking only for an order "vacating and setting aside the determination to add Hefei Bitland to the UFLPA Entity List" and a permanent injunction preventing Defendants from "implementing or enforcing that designation." *Id.* at 33. Alternatively, it seeks an order "remand[ing]" the matter to the FLETF "with instructions to remove Hefei Bitland from the UFLPA Entity List". *Id.*

## STANDARDS OF REVIEW

In deciding a motion to dismiss for a lack of subject-matter jurisdiction, the court "assumes all factual allegations to be true and draws all reasonable inferences in the claimant's favor." *Houston Shutters LLC v. United States*, 816 F. Supp. 3d 1349, 1351 (Ct. Int'l Trade 2026). But when "considering any chain of allegations for standing purposes," courts "may reject as overly speculative those links which are predictions of future events (especially future actions to be

taken by third parties)." *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015). Further, when a motion "challenges a complaint's allegations of jurisdiction, the factual allegations in the complaint are not controlling and only uncontroverted factual allegations are accepted as true." *Houston Shutters*, 816 F. Supp. 3d at 1351 (quotation omitted). And when resolving disputes of jurisdictional facts, "a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings." *Id.*

On a motion under Rule 12(b)(6), the Court must dismiss a complaint unless it "contain[s] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the Court must "accept as true the complaint's well-pled factual allegations," it is "not required to accept" its "asserted legal conclusions." *Am. Bankers Ass'n v. United States*, 932 F.3d 1375, 1380 (Fed. Cir. 2019).

## ARGUMENT

Both counts of the Complaint must be dismissed because plaintiff cannot carry its burden to establish standing. Alternatively, the

Complaint should be dismissed for failure to state a claim or, at minimum, Count Two should be dismissed as unripe.

## I. The Complaint Must Be Dismissed For Lack of Standing

Standing is a "bedrock constitutional requirement." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 378 (2024). To carry its burden, plaintiff must demonstrate (1) an "injury in fact," (2) that the injury was "caused or will be caused" by defendant, and (3) that the injury "would be redressed by the requested judicial relief." *Id.* at 380. Shenzhen Bitland argues that it suffers an economic injury, reputation injury, and procedural injury, but none of its allegations satisfy the requirements of standing.

### A. Shenzhen Bitland's economic and reputational injuries are speculative

Shenzhen Bitland's complaint states that, because its defunct subsidiary was on the BIS Entity List and is on the UFLPA Entity List, it has lost business in the past and that it "believe[s]" that a favorable result in this case would cause its customers to return. *See* Compl. ¶¶ 52, 80, 82–84, 87. Shenzhen Bitland's alleged economic injury does not give it standing because it has not plausibly alleged that it is prospective, fairly traceable to defendants, or likely to be redressed.

And while Shenzhen Bitland alleges that it suffers from a reputational injury, *id.* ¶ 52, that claim is neither traceable to defendants' conduct nor redressable by a favorable court order.

***Injury in fact.*** A plaintiff bears the burden to demonstrate an "actual or imminent, not speculative" injury. *All. for Hippocratic Med.*, 602 U.S. at 380. "And when a plaintiff seeks prospective relief such as an injunction, the plaintiff must establish a sufficient likelihood of *future* injury." *Id.* (emphasis added)

Though Shenzhen Bitland pursues prospective relief, *see* Compl. at 33, it does not allege an imminent prospective economic injury. It states that it "has worked" to regain customers and "has been . . . unable to" do so, providing vague allegations regarding two past examples. *Id.* ¶¶ 81–83. It does not allege when these attempts occurred or whether they are continuing to do so. These allegations do not even plausibly allege that a further economic injury is "likely to occur soon." *All. for Hippocratic Med.*, 602 U.S. at 381. In the absence of a plausibly alleged prospective injury, Shenzhen Bitland's allegations of economic injury do not support standing to pursue prospective relief.

***Fairly traceable.*** Even if the Court could infer from the Complaint that Shenzhen Bitland *imminently* faces a prospective economic or reputational injury, it has not plausibly alleged that those injuries are fairly traceable to defendants. That element requires a plaintiff to show that the claimed injury is "likely caused or likely will be caused" by the challenged decision. *Id.* at 382.

Shenzhen Bitland's economic injury argument relies on the response of third parties—its hypothetical future customers—to the government's action. In finding an injury traceable to the government's action, the Court therefore "cannot rely on speculation about the unfettered choices" made by those "independent actors not before the court[]." *Id.* at 383 (quotation omitted). Rather, Shenzhen Bitland must "show that the third parties will *likely* react in predictable ways that in turn will likely injure the plaintiffs." *Id.* (quotation omitted) (emphasis added).

Shenzhen Bitland's complaint does not plausibly allege that unidentified hypothetical future customers will likely react to Hefei Bitland's continued presence on the UFLPA Entity List in a way that will predictably cause Shenzhen Bitland a future injury. First and

foremost, Shenzhen Bitland claims that Hefei Bitland has been defunct for nearly four years. Compl. ¶ 44. While Shenzhen Bitland asserts that former customers cited the UFLPA Entity List in the past, Shenzhen Bitland does not identify the customers, state when these potential deals fell through, or otherwise give the Court any way to reasonably infer the likelihood that Shenzhen Bitland will have similar business opportunities in the future. And even if the future customer were to cite the allegedly defunct subsidiary in making its decision, Shenzhen Bitland assumes that the underlying reason would be continued presence on the UFLPA Entity List, *not* reputational damage and risk assessment changes stemming from the initial BIS Entity Listing or WRO, reputational damage and risk assessment changes that would not be cured by a removal that does not disturb the initial listing decision, or Hefei Bitland's active WRO. *See* Compl. ¶ 40; Hefei Bitland WRO. Insofar as Shenzhen Bitland might assert that a customer's past statement that the UFLPA Entity List was the "sole barrier" means that it will similarly be the "sole barrier" in the future, *see* Compl. ¶ 84, this argument is implausible, since it fails to give any reason why the Hefei Bitland WRO would not be a barrier to that business.

While the Court draws reasonable inferences in Shenzhen Bitland's favor, it is a bridge too far to infer that if Hefei Bitland is removed from the UFLPA Entity List, that would result in: *first* Shenzhen Bitland having similar business opportunities to those it had prior to the BIS Entity Listing in the future, *second* that the customers will continue to cite the subsidiary that is allegedly four-years defunct in its decision making, and *third* that the customer's decision will be based on the UFLPA Entity List and not the WRO. The Court should "reject as overly speculative" this "prediction[] of future events," "especially" because they involve "third parties." *Food & Water Watch, Inc.*, 808 F.3d at 913. Even if Shenzhen Bitland had plausibly alleged that it faces future lost business and reputational injury attributable specifically to continued presence of its allegedly defunct subsidiary on the UFLPA Entity List, it has not plausibly alleged that removal from the UFLPA Entity List will likely cause third parties to behave in a predictable way that will cause Shenzhen Bitland's claimed future injuries.

***Likely to be redressed.*** Finally, even if Shenzhen Bitland could meet the first two requirements of standing, it has not demonstrated

that its economic or reputational injuries are likely to be redressed. This requirement is "often" the "flip side[]" of traceability: removing the cause of a harm may prevent it from occurring. *All. for Hippocratic Med.*, 602 U.S. at 380. And as with traceability, when a plaintiff's redressability theory depends on the independent actions of third parties not before the Court, a plaintiff must "thread the needle" and show that the third parties "will likely react in predictable ways" that will redress its injury. *All. for Hippocratic Med.*, 602 U.S. at 383.

Shenzhen Bitland asserts that if it receives a favorable result in this case, it "has every reason to believe that its export business . . . would restore to past levels." Compl. ¶ 87. About its reputational injury, the Complaint does not even attempt to explain how an order would provide a remedy. This does not suffice.

Even crediting Shenzhen Bitland's allegations, it asks the Court to find "likely" a series of speculative events. Regarding its economic injury, Shenzhen Bitland again speculates *first* that it will have similar business opportunities in the future, *second* that the customers will continue to cite Hefei Bitland as an impediment, and *third* that the customers' decision will be based on the UFLPA Entity List rather than

some other consideration, such that removing Hefei Bitland from the list will predictably result in restoration of prior business. The same goes for Shenzhen Bitland's reputation. The Complaint does not support this chain of inferences with respect to the claimed economic injury or reputational injury.

Even setting all of that aside, however, Shenzhen Bitland still has not established redressability because its claimed injury will continue to be held in place by other circumstances. "[R]edressability cannot always be logically inferred from traceability" because there are "some circumstances in which governmental action is a substantial contributing factor in bringing about a specific harm, but the undoing of the governmental action will not undo the harm." *Doc Society v. Rubio*, 141 F.4th 1273, 1278 (D.C. Cir. 2025). That is the case here: even if Hefei Bitland is removed from the UFLPA Entity List, the Hefei Bitland WRO remains. Even if Shenzhen Bitland were to obtain a favorable order in this litigation, this Court's action would not "undo" the claimed "harm[s]." *Id.*

Shenzhen Bitland's own complaint indicates that a favorable ruling, far from "likely" to provide a remedy, is unlikely to make any

difference at all. It states that its customers declined business in the past because of a "concern" or "fear[]" about products being detained, and that one also cited "internal regulatory requirements," Compl. ¶¶ 82, 83—all considerations that could equally stem from Hefei Bitland's WRO. Regarding the reputational injury, the Complaint does not even attempt to explain how removing Hefei Bitland from the UFLPA Entity List would provide redress. Indeed, as CBP stated when announcing the Hefei Bitland WRO, the agency found that evidence before it "reasonably indicates" that it used "both prison and forced labor." CBP, *DHS Cracks Down on Goods Produced by China's State-Sponsored Forced Labor*, https://perma.cc/6ARN-LMFA. Those facts would be unmoved by a favorable outcome in this case.

Shenzhen Bitland's complaint does not assert facts making it "likely" that a favorable order will provide it with redress. Rather, its allegations show a likelihood of the *opposite*: that its claimed injuries will be held in place by forces outside of the scope of its claims. Those allegations do not support redressability for its claimed economic and reputational injuries.

### B. Shenzhen Bitland does not meet the requirements to advance a procedural injury

Finally, Shenzhen Bitland asserts a procedural injury related to its unreasonable delay claim, *see* Compl. ¶ 79, but "[o]nly a person who has been accorded a procedural right to protect *his concrete interests* can assert that right without meeting all the normal standards for redressability and immediacy." *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (emphasis in original). Shenzhen Bitland "must still demonstrate the causal relationship between the final agency action and the alleged injuries." *Ctr. For Law & Educ. v. Dep't of Educ.*, 396 F.3d 1152, 1160 (D.C. Cir. 2005).

As described above, Shenzhen Bitland does not even allege a prospective injury, nor has it demonstrated how any past or future injury is traceable to defendants or would likely be redressed by a favorable order. And insofar as Shenzhen Bitland alleges a reputational injury, it is speculative to allege that it is traceable to the UFLPA Entity List, and it is unlikely to be redressed by court order. In short, Shenzhen Bitland cannot show the relationship between its asserted injuries and its claim that the FLETF's has unlawfully delayed issuing decision on its request. It thus asserts a "procedural right *in*

*vacuo*," which "is insufficient to create Article III standing." *Summers*, 555 U.S. at 496.

* * *

Standing "requires a plaintiff to first answer a basic question: 'What's it to you?'" *All. for Hippocratic Med.*, 602 U.S. at 379. On that score, the Complaint raises more questions than it answers. Unless and until plaintiff can identify an imminent future injury traceable to the UFLPA Entity List that is likely redressed by a favorable outcome, the Complaint should be dismissed.

## II. Alternatively, the Complaint Must Be Dismissed for Failure to State a Claim, or at Minimum, Count Two Should Be Dismissed as Unripe

Count One of the Complaint alleges that the FLETF has unreasonably delayed issuing a decision on its request, but it does not seek an order directing the FLETF to issue such a decision. *See* Compl. ¶¶ 83–92 & at 33. Similarly, Count Two of the Complaint alleges that, by not acting on Shenzhen Bitland's request to remove Hefei Bitland from the UFLPA Entity List sooner, the FLETF has constructively denied it. Compl. ¶ 97. Shenzhen Bitland asks the Court to reverse the alleged tacit denial on its merits. *Id.* ¶ 103. Neither count plausibly

alleges that Plaintiff is entitled to the relief it actually seeks, an order on the merits. *Id.* at 33. And they certainly do not support a claim that would support an order vacating the initial listing decision, which is not even challenged here. *Id.*

Both counts should be dismissed for failure to state a claim. In the alternative, Count Two should be dismissed as unripe.

### A. The Complaint must be dismissed for failure to state a claim

First, Count One does not state a claim under 5 U.S.C. § 706(1) because it seeks relief which Shenzhen Bitland cannot obtain. The APA empowers a court only to "compel" the action allegedly delayed, 5 U.S.C. § 706(1)—that is, to direct an agency to "take action upon a matter, without directing *how* it shall act." *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004). Even if Shenzhen Bitland otherwise stated a claim of unreasonable delay, it does not seek the only appropriate relief it could receive: an order that the FLETF take action on the matter, without directing how it shall act. *Id.* Count One thus fails to state a "claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678.

Second, Count Two does not state a claim under 5 U.S.C. § 706(2) because, as it candidly admits, the FLETF has not issued a final

decision on its request. *See* Compl. ¶¶ 93–103. Its claim thus should be dismissed for failure to state a claim. *See Odyssey Logistics and Tech. Corp. v. Iancu*, 959 F.3d 1104, 1109 (Fed. Cir. 2020).

Shenzhen Bitland's allegation that the FLETF's delayed action constructively denied its request is incorrect. As defendants previously stated, the FLETF has been actively engaged with Bitland's request and is making substantial progress in resolving it. *See* ECF No. 12 at 4. No allegation of the complaint contradicts that characterization. While Shenzhen Bitland alleges that the FLETF has had the information required to evaluate its request for "more than a year," in reality the FLETF has received information from Bitland as recently as mere months ago. Compl. ¶¶ 73, 99. FLETF's "delay" is not in the realm of what Courts have considered unreasonably delayed as a matter of law. Rather, in some contexts courts have "generally found" that "delays in excess of five, six, seven years are unreasonable, while those between three to five years are not unreasonable." *See Palakuru v. Renaud*, 521 F. Supp. 3d 46, 52 (D.D.C. 2021) (quoting *Yavari v. Pompeo*, No. 2:19-cv-2524, 2019 WL 6720995, at *8 (C.D. Cal. Oct. 10, 2019). A period of

"slightly more than a year is drastically short of what constitutes an unreasonable delay" in some contexts. *Yavari*, 2019 WL 6720995, at *8.

Contrary to Shenzhen Bitland's bare assertions, this is not a case where the FLETF's delay is "effectively final agency action that the agency has not frankly acknowledged." *Sierra Club v. Thomas*, 929 F.2d 783, 793 (D.C. Cir. 1987). The FLETF's decision making process is ongoing and will result in a written final decision on Shenzhen Bitland's request. There is a "strong presumption" that "judicial review will be available *only* when agency action becomes final." *Bell v. New Jersey*, 461 U.S. 773, 778 (1983) (emphasis added). The FLETF's decision is not final, so judicial review is not yet available.

In sum, both counts should be dismissed for failure to state a claim on which relief could be granted.

**B. Count Two is not ripe for review**

In the alternative, if Count Two is not dismissed for failure to state a claim, it should be dismissed as unripe. Whether an action is "ripe" requires the Court to evaluate "both the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration." *Caraco Pharm. Lab'ys, Ltd. v. Forest Lab'ys, Inc.*, 527

F.3d 1278, 1294–95 (Fed. Cir. 2008). This doctrine is designed "to prevent the courts, through the avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect the agencies from judicial interference until an administrative decision has been formalized." *Nat'l Park Hosp. Ass'n v. Dep't of Interior*, 538 U.S. 803, 807–808 (2003).

Here, the Court should not review the merits of the FLETF's forthcoming decision until the FLETF has provided its reasoning and the administrative record of its decision. Delaying review will avoid judicial interference with the pending administrative decision and, in the meantime, Shenzhen Bitland will not suffer undue hardship.

*Fit for review.* Fitness of an issue for judicial review turns on whether an action marks the "consummation of the agency's decision-making process" and if "rights or obligations have been determined from which legal consequences will flow." *Sys. Application & Techs., Inc. v. United States*, 691 F.3d 1374, 1384 (Fed. Cir. 2012). A case is not ripe where "further factual development would 'significantly advance [a court's] ability to deal with the legal issues presented.'" *Nat'l Park*

*Hosp. Ass'n*, 538 U.S. at 812 (2003) (quoting *Duke Power Co. v. Carolina Env't Study Grp., Inc.*, 438 U.S. 59, 82 (1978)).

Here, since the FLETF has not yet issued its decision on Shenzhen Bitland's request, there has been no consummation of the agency's decision-making process. *Sys. Application & Techs.*, 691 F.3d at 1384. Moreover, this Court's review of the issues would be significantly advanced by allowing the FLETF to issue its final decision, since the decision and related administrative record are essential to judicial review. After all, APA review is "limited to and confined by" the administrative record. *See New LifeCare Hosps. Of N.C., LLC v. Becerra*, 7 F.4th 1215, 1224 (D.C. Cir. 2021).

Moreover, the Court would benefit from the FLETF issuing a decision in the first instance, since doing so would give the agency "the first chance to exercise [its] discretion" and "expertise." *McKart v. United States*, 395 U.S. 185, 194 (1969). Congress tasked the FLETF with making decisions under the UFLPA, and it should be allowed the opportunity to carry out that responsibility. *FTC v. Standard Oil Co. of Calif.*, 449 U.S. 232, 242 (1980) (judicial intervention would "den[y] the agency an opportunity to . . . apply its expertise").

*Undue hardship*. Withholding consideration would not cause Shenzhen Bitland undue hardship because doing so would not have "an 'immediate and substantial impact' on the plaintiff." *Caraco*, 527 F.3d at 1295 (quoting *Gardner v. Toilet Goods Ass'n*, 387 U.S. 167, 171 (1967)). A mere "possible financial loss is not by itself a sufficient interest to sustain a judicial challenge to governmental action." *Abbot Lab'ys v. Gardner*, 387 U.S. 136, 153 (1967). As set out above, Shenzhen Bitland's claimed injuries are too speculative to support standing. They similarly fail to establish that allowing the FLETF to issue its final decision would cause Shenzhen Bitland undue hardship.

In sum, if Count Two is not dismissed for failure to state a claim, it should be dismissed as unripe and this Court's review should await further factual development. The FLETF will either grant Shenzhen Bitland's request, mooting this case, or Shenzhen Bitland will be able to file an amended complaint challenging the FLETF's final decision based on an administrative record.

## CONCLUSION

For these reasons, the complaint should be dismissed for lack of jurisdiction.

Respectfully submitted,

BRETT A. SHUMATE
Assistant Attorney General

PATRICIA M. MCCARTHY
Director

CLAUDIA BURKE
Deputy Director

s/ Oliver J. McDonald
OLIVER J. MCDONALD
Trial Attorney
Commercial Litigation Branch
Civil Division
U.S. Department of Justice
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
(202) 305-0168
Oliver.J.McDonald@usdoj.gov

October 9, 2026

*Attorneys for Defendants*

## Certificate of Compliance

I hereby certify that this motion complies with the 14,000-word limitation authorized by the Court's Chambers Procedures because it contains 5,174 words, excluding the parts of the brief exempted from the word limitation. In preparing this certificate of compliance, I have relied upon the word count function of the word processing system used to prepare the brief.

s/ Oliver J. McDonald
OLIVER J. MCDONALD

## Generative Artificial Intelligence Certification

I hereby certify that this motion was not prepared with the assistance of a generative artificial intelligence program based on natural language prompts.

s/ Oliver J. McDonald
OLIVER J. MCDONALD