**IN THE UNITED STATES**
**COURT OF INTERNATIONAL TRADE**

SHENZHEN BITLAND INFORMATION TECHNOLOGY CO., LTD.,

*Plaintiff*,

v.

UNITED STATES OF AMERICA, *et al.*,

*Defendants*.

Before: M. Miller Baker, Judge

Case No. 26-03083

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Wendy Wysong
Brian J. Fleming
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Tel: (202) 429-8158
wwysong@steptoe.com
bfleming@steptoe.com

Michael G. Scavelli
STEPTOE LLP
1133 Avenue of the Americas
New York, NY 10036
Tel: (212) 506-3900
mscavelli@steptoe.com

# TABLE OF CONTENTS

**INTRODUCTION** .......... **1**

**BACKGROUND** .......... **5**

A. The Uyghur Forced Labor Prevention Act Imposes Harsh Penalties on Designated Entities. .......... 5

B. Hefei Bitland Is Included in the First UFLPA Entity List, and Shenzhen Bitland Seeks Its Removal .......... 7

C. Shenzhen Bitland's Good-Faith Efforts to Engage FLETF Are Met With Dilatory Tactics .......... 10

D. FLETF Updates the UFLPA Entity List, But Does Not Remove Hefei Bitland, Causing Ongoing Harm to Shenzhen Bitland. .......... 11

E. Failing to Obtain a Decision on Its Petition, Shenzhen Bitland Initiates the Present Action. .......... 13

**STANDARD OF REVIEW** .......... **13**

**ARGUMENT** .......... **15**

A. Shenzhen Bitland Has Standing to Bring Its Claims. .......... 15

1. Shenzhen Bitland has suffered injuries-in-fact. .......... 16

2. Shenzhen Bitland's injury is traceable to the Government's failure to act .......... 21

3. Shenzhen Bitland's injury is redressable by a favorable decision. .......... 29

4. Shenzhen Bitland has standing to vindicate its procedural injury .......... 32

B. The Complaint Adequately States Claims for Relief Under the APA. .......... 35

1. FLETF's failure to resolve Shenzhen Bitland's petition constitutes reviewable final agency action. .......... 36

2. After two years of delay, Shenzhen Bitland's claims are ripe for adjudication. .......... 43

3. This Court is empowered to grant the relief Plaintiff seeks. .......... 47

**LEAVE TO AMEND .......... 50**

**CONCLUSION .......... 50**

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Abbott Labs. v. Gardner*,
387 U.S. 136 (1967) .......... 43

*Autolog Corp. v. Regan*,
731 F.2d 25 (D.C. Cir. 1984) .......... 24

*Barnum Timber Co. v. U.S. EPA*,
633 F.3d 894 (9th Cir. 2011) .......... 27

*Boaz Hous. Auth. v. United States*,
994 F.3d 1359 (Fed. Cir. 2021) .......... 15

*Bost v. Illinois State Bd. of Elections*,
607 U.S. 71 (2026) .......... 20

*California v. Texas*,
593 U.S. 659 (2021) .......... 25

*Canadian Lumber Trade Alliance v. United States*,
517 F.3d 1319 (Fed. Cir. 2008) .......... 16, 17

*Capella Sales & Servs. Ltd. v. United States*,
878 F.3d 1329 (Fed. Cir. 2018) .......... 14

*Cedars-Sinai Med. Ctr. v. Watkins*,
11 F.3d 1573 (Fed. Cir. 1993) .......... 14, 46

*Cobell v. Norton*,
240 F.3d 1081 (D.C. Cir. 2001) .......... 36, 37

*Doc Society v. Rubio*,
141 F.4th 1273 (D.C. Cir. 2025) .......... 30

*Env't Def. Fund, Inc. v. Hardin*,
428 F.2d 1093 (D.C. Cir. 1970) .......... 37

*F.T.C. v. Bisaro*,
757 F. Supp. 2d 1 (D.D.C. 2010) .......................................................... 40

*FDA v. All. for Hippocratic Med.*,
602 U.S. 367 (2024) .......................................................... 19, 22

*Florida Home Builders Ass'n v. Norton*,
496 F. Supp. 2d 1330 (M.D. Fla. 2007) .......................................................... 36

*Gilda Industries, Inc. v. United States*,
446 F.3d 1271 (Fed. Cir. 2006) .......................................................... 32, 35

*Gonzalez v. Cuccinelli*,
985 F.3d 357 (4th Cir. 2021) .......................................................... 47

*Hoshine Silicon (Jia Xing) Industry Co., Ltd. v. United States*,
780 F. Supp. 3d 1328 (CIT 2025) .......................................................... 21

*Houston Shutters LLC v. United States*,
816 F. Supp. 3d 1349 (CIT 2026) .......................................................... 14, 42, 43

*Invenergy Renewables LLC v. United States*,
422 F. Supp. 3d 1255 (CIT 2019) .......................................................... 31, 32, 35, 50

*Luca McDermott Catena Gift Trust v. Fructuoso-Hobbs SL*,
102 F.4th 1314 (Fed. Cir. 2024) .......................................................... 20

*Lujan v. Defenders of Wildlife*,
504 U.S. 555 (1992) .......................................................... 15, 16, 18, 29

*Massachusetts v. EPA*,
549 U.S. 497 (2007) .......................................................... 31

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) .......................................................... 23

*Nathan v. Alamo Heights Indep. Sch. Dist.*,
173 F.4th 576 (5th Cir. 2026) .......................................................... 43

*Ninestar Corp. v. United States*,
687 F. Supp. 3d 1308 (CIT 2024) .......... 6, 49

*Norton v. S. Utah Wilderness All.*,
542 U.S. 55 (2004) .......... 49

*Palakuru v. Renaud*,
521 F. Supp. 3d 46 (D.D.C. 2021) .......... 41

*Public Lands for the People, Inc. v. U.S. Dep't of Agric.*,
733 F. Supp. 2d 1172 (E.D. Cal. 2010) .......... 43

*Ramizi v. Blinken*,
745 F. Supp. 3d 244 (E.D.N.C. 2024) .......... 48

*Reynolds v. Army & Air Force Exch. Serv.*,
846 F.2d 746 (Fed. Cir. 1988) .......... 13

*Shukh v. Seagate Tech., LLC*,
803 F.3d 659 (Fed. Cir. 2015) .......... 20

*Sierra Club v. Thomas*,
828 F.2d 783 (D.C. Cir. 1987) .......... 37

*Summers v. Earth Island Inst.*,
555 U.S. 488 (2009) .......... 33

*Susan B. Anthony List v. Driehaus*,
573 U.S. 149 (2014) .......... 16

*Sywula v. Teleport Mobility, Inc.*,
652 F. Supp. 3d 1195 (S.D. Cal. 2023) .......... 27

*Telecommunications Research & Action Center v. FCC*,
750 F.2d 70 (D.C. Cir. 1984) .......... 35, 41

*Teton Historic Aviation Found. v. U.S. Dep't of Defense*,
785 F.3d 719 (D.C. Cir. 2015) .......... 29

*Vara v. DeVos*,
2020 WL 3489679 (D. Mass. June 5, 2020) .......... 37

*Yavari v. Pompeo*,
2019 WL 6720995 (C.D. Cal. Oct. 10, 2019) ........................................ 41

**Statutes**

5 U.S.C. § 551(13) ........................................................................ 36

5 U.S.C. § 706(2)(A) ........................................................................ 42

Press Statement, U.S. Dep't of State, *Additions to the Uyghur Forced Labor Prevention Act Entity List* (July 31, 2026), https://www.state.gov/releases/office-of-the-spokesman/2026/07/additions-to-the-uyghur-forced-labor-prevention-act-entity-list. ........................................ 24

Uyghur Forced Labor Prevention Act, Pub. L. 117-78, 135 Stat. 1525 (2021) ........................................ 1, 5, 6, 7, 48

**Other Authorities**

*Addition of Certain Entities to the Entity List; Revision of Existing Entries on the Entity List*, 85 Fed. Reg. 44,159 (July 22, 2020) ........................................ 7

Hefei Bitland. Press Release, DHS Cracks Down on Goods Produced by China's State-Sponsored Forced Labor (Sept. 14, 2020), https://www.cbp.gov/newsroom/national-media-release/dhs-cracks-down-goods-produced-china-s-state-sponsored-forced-labor ........................................ 7

*Notice on the Addition of Entities to the Uyghur Forced Labor Prevention Act Entity List*, 87 Fed. Reg. 47,777 (Aug. 4, 2022) ........................................ 7, 8, 9, 48

U.S. Dep't of Homeland Sec., *Report to Congress, 2025 Updates to the Strategy to Prevent the Importation of Goods Mined, Produced, or Manufactured with Forced Labor in the People's Republic of China* (Aug. 19, 2025), https://www.dhs.gov/sites/default/files/2025-08/25_0819_plcy_uflpa-strategy-2025-update-508.pdf ................ 12, 42

## GLOSSARY

| | |
|---|---|
| **BIS:** | Bureau of Industry and Security |
| **CBP:** | Customs and Border Protection |
| **DHS:** | Department of Homeland Security |
| **ERC:** | End-User Review Committee |
| **FLETF:** | Forced Labor Enforcement Task Force |
| **Motion:** | Defendants' Motion to Dismiss (ECF 18) |
| **UFLPA:** | Uyghur Forced Labor Prevention Act |
| **UFLPA Strategy:** | Strategy required by UFLPA § 2(c) |
| **WRO:** | Withhold Release Order |
| **2025 UFLPA Strategy:** | UFLPA Strategy published on Aug. 19, 2025 |

## INTRODUCTION

In 2022, the Government placed Hefei Bitland Information Technology Co., Ltd. ("Hefei Bitland"), a subsidiary of Plaintiff Shenzhen Bitland Information Technology Co., Ltd. ("Shenzhen Bitland"), on the Uyghur Forced Labor Prevention Act ("UFLPA") (Pub. L. 117-78, 135 Stat. 1525 (2021)) Entity List. There was just one problem: Hefei Bitland was no longer operating. It had stopped manufacturing, laid off its entire workforce, and shut its doors two years earlier. Relying on Hefei Bitland's prior inclusion on the Bureau of Industry and Security ("BIS") Entity List, Defendants nonetheless accused it of recruiting, transferring, harboring, or receiving forced labor and of sourcing materials made with forced labor. *See* UFLPA § 2(d)(2)(B)(ii), (v). A company with no operations and no workers could not have done any of those things.

In 2024, the U.S. government acknowledged this. BIS removed Hefei Bitland from its Entity List based on "an overwhelming amount of evidence" that the company was dissolved and non-operational. Nevertheless, Defendants did not remove Hefei Bitland from the UFLPA Entity List. On November 18, 2024, Shenzhen Bitland asked

the Forced Labor Enforcement Task Force ("FLETF") to remove its former subsidiary, explaining that the sole basis for the listing had collapsed and submitting the same evidence that had persuaded BIS.

What followed was two years of delay. Under the guise of "deliberating," FLETF sent request after request for information that Shenzhen Bitland had already provided or that had nothing to do with the statutory criteria—a tacit admission that there was nothing left to learn about a company that closed years ago.

Even now, Defendants will not say when—or whether—they will remove Hefei Bitland from the list. They promise only a "decision" at some point. Meanwhile, the listing continues to brand Shenzhen Bitland with the stigma of forced labor and to cost it real business from customers who have identified the listing as the sole barrier to working together.

Defendants' Motion to Dismiss (ECF 18) (the "Motion") should be denied for four reasons.

*First*, Shenzhen Bitland has standing. Defendants contend that Shenzhen Bitland's injuries are "speculative," resting on "vague allegations regarding two past examples." Mot. at 12-13. They are

wrong on the law and the facts. The Complaint alleges a range of harms that are clearly attributable to Defendants' failure to act on Plaintiff's removal request. Among them, the Complaint specifically identifies two global technology customers that walked away from substantial business opportunities with Shenzhen Bitland and identified the uncertainty surrounding the UFLPA listing as the *sole* barrier to moving forward. Compl. ¶¶ 82-84. Defendants answer these clear allegations with nothing but speculation and alternative theories that are both wrong and beside the point. Moreover, even if the Court were to look beyond the pleadings in connection with Defendants' standing arguments (and it need not), Plaintiff has submitted a comprehensive declaration from its President contradicting Defendants' speculation and demonstrating that the harm to Plaintiff is concrete and continuing.

*Second*, the Complaint states claims under the Administrative Procedure Act ("APA"). Defendants do not—and cannot—dispute that Count One adequately pleads unreasonable delay; they challenge only the form of relief requested. This argument is both wrong and not grounds for dismissal. As to Count Two, Defendants contend there is no

final agency action because FLETF is "actively engaged" and "making substantial progress." Mot. at 22-24. That argument ignores settled law that an agency's refusal to perform a statutory duty is itself reviewable agency action, and it substitutes Defendants' say-so for the Complaint's detailed, unrebutted account of duplicative questions, ignored follow-ups, and stalled review.

*Third*, Count Two is ripe. Defendants argue that the Court should await FLETF's "forthcoming decision" and administrative record, and that delay imposes no undue hardship. Mot. at 24-27. That argument mischaracterizes the claim. Count Two challenges what FLETF has *already* failed to do, not some future decision FLETF may someday render. FLETF has had a complete record and every opportunity to apply its expertise since November 2024, and Defendants do not dispute that Shenzhen Bitland has been waiting ever since. Further delay serves only to deepen the commercial harm Shenzhen Bitland suffers with each procurement cycle.

*Finally*, the Court has authority to grant relief. Defendants contend that the Court may only order FLETF to act, not direct the outcome, and that vacatur is unavailable because the initial listing is

not challenged. Mot. at 21-22. Both points miss the mark. Because a defunct company cannot satisfy the UFLPA's listing criteria, the law calls for only one outcome: delisting. Shenzhen Bitland challenges FLETF's *continued* designation, not merely the initial listing, and the Court may vacate it, remand with instructions to delist, or, at the very least, compel FLETF to decide the petition by a date certain.

The Motion should be denied.

## BACKGROUND

### A. The Uyghur Forced Labor Prevention Act Imposes Harsh Penalties on Designated Entities.

The UFLPA directs federal agencies to block imports tied to forced labor, particularly forced labor of Uyghurs and other persecuted groups in or from the Xinjiang Uyghur Autonomous Region of the People's Republic of China. UFLPA §§ 1-2. The UFLPA requires FLETF to "develop a strategy for supporting enforcement of Section 307 of the Tariff Act of 1930 (19 U.S.C. § 1307) to prevent the importation into the United States of goods mined, produced, or manufactured wholly or in part with forced labor in the People's Republic of China." *Id.* § 2(c). Under the UFLPA, that strategy (the "UFLPA Strategy") must include a periodically updated list of entities that meet the statutorily

established categories of forced-labor risks. *Id.* § 2(d)(2)(B)(i)-(v), (e)(2). The UFLPA requires FLETF to publish the UFLPA Strategy for public notice and comment and then to submit the Strategy to the appropriate congressional committees on an annual basis. *Id.* § 2(e). FLETF's submission to Congress must set forth, among other things, the entities listed pursuant to clauses (i) through (ix) of UFLPA subsection (d)(2)(B). *Id.* This Court has held that the UFLPA does not apply retroactively to conduct predating the statute's effective date. *See Ninestar Corp. v. United States*, 687 F. Supp. 3d 1308, 1335-37 (CIT 2024).

The UFLPA directs U.S. Customs and Border Protection ("CBP") to apply a rebuttable presumption that importation of "any goods, wares, articles, and merchandise . . . produced by an entity on [the UFLPA Entity List]" is barred pursuant to section 307 of the Tariff Act of 1930 and therefore inadmissible at U.S. ports of entry. UFLPA § 3(a). That presumption applies unless the CBP Commissioner determines that the importer of record has: (i) fully complied with FLETF's supply-chain guidance; (ii) cooperated completely with all CBP requests for information; and (iii) demonstrated, by clear and convincing evidence, that the goods were not produced in whole or in part with

forced labor. *Id.* § 3(b). The failure to satisfy any of these conditions results in exclusion of the merchandise from the U.S. market.

Requests for removal from the UFLPA Entity List are directed to the FLETF Chair. *See Notice on the Addition of Entities to the Uyghur Forced Labor Prevention Act Entity List*, 87 Fed. Reg. 47,777-78 (Aug. 4, 2022). The FLETF Chair refers such removal requests and supporting information to FLETF member agencies and advises the petitioner of FLETF's decision on its removal request in writing. *Id.*

B. Hefei Bitland Is Included in the First UFLPA Entity List, and Shenzhen Bitland Seeks Its Removal.

On July 22, 2020, the U.S. Department of Commerce's Bureau of Industry and Security ("BIS") added Hefei Bitland to the BIS Entity List. *Addition of Certain Entities to the Entity List; Revision of Existing Entries on the Entity List*, 85 Fed. Reg. 44,159 (July 22, 2020). CBP subsequently issued a withhold release order ("WRO") on Hefei Bitland. Press Release, DHS Cracks Down on Goods Produced by China's State-Sponsored Forced Labor (Sept. 14, 2020), https://www.cbp.gov/newsroom/national-media-release/dhs-cracks-down-goods-produced-china-s-state-sponsored-forced-labor. Hefei Bitland's inclusion on the BIS Entity List, although unsupported by the

record, significantly impacted Hefei Bitland's business. By September 2020, Hefei Bitland had ceased manufacturing and laid off all of its employees. Compl. ¶ 44; Ex. A, Declaration of Penghui Cai ¶ 4 ("Cai Declaration"). Following the UFLPA's enactment, CBP itself designated the Hefei Bitland WRO as "[s]uperseded by enforcement of [the] UFLPA rebuttable presumption." Mot. at 6-7 (quoting CBP's WRO dashboard).

Nearly two years later, on August 4, 2022, and just months before Hefei Bitland would complete its formal deregistration, the U.S. Department of Homeland Security ("DHS") published the first UFLPA Entity List, which included Hefei Bitland. *See Notice on the Addition of Entities to the Uyghur Forced Labor Prevention Act Entity List*, 87 Fed. Reg. 47,777, 47,779 (Aug. 4, 2022). FLETF designated Hefei Bitland under clauses (ii) and (v) of section 2(d)(2)(B) of the UFLPA—namely, that Hefei Bitland had "work[ed] with the government of Xinjiang to recruit, transport, transfer, harbor or receive forced labor," and "source[d] material from . . . government-labor scheme[s] that use[] forced labor." *Id.* (citing UFLPA § 2(d)(2)(B)(ii), (v)). DHS's only justification for Hefei Bitland's designation was its generally applicable statement that the UFLPA listings were based on (i) prior WROs and

(ii) BIS's Entity List designations. *Id.* at 47,778. DHS did not explain how Hefei Bitland, a defunct company that had been non-operational for nearly two years, could meet the criteria for designation under the UFLPA.

On September 22, 2023, Shenzhen Bitland submitted a request to the BIS End-User Review Committee ("ERC") for the removal of Hefei Bitland from the BIS Entity List. Compl. ¶ 54. One year later, after significant engagement between Shenzhen Bitland and the ERC, Hefei Bitland was removed from BIS's Entity List on the basis that there was "an overwhelming amount of evidence" showing the company was dissolved and non-operational. *Id.* ¶¶ 55-59.

Following the removal of Hefei Bitland from the BIS Entity List, Shenzhen Bitland filed a formal request with FLETF on November 18, 2024, seeking the removal of Hefei Bitland from the UFLPA Entity List, because the stated justification for its inclusion was no longer valid after its removal from the BIS Entity List. *Id.* ¶ 59. As part of its request, Shenzhen Bitland provided FLETF with BIS's decision to remove Hefei Bitland from the BIS Entity List, along with hundreds of pages of evidence confirming that Hefei Bitland was defunct, had

ceased all operations years before the UFLPA took effect, and had never engaged in any conduct falling within UFLPA section 2(d)(2)(B)(ii) or (v). *Id.*

### C. Shenzhen Bitland's Good-Faith Efforts to Engage FLETF Are Met With Dilatory Tactics.

For nearly two years, Shenzhen Bitland has diligently pursued relief through its petition. FLETF's review of that petition, by contrast, has been superficial at best and reflects neither serious consideration of the petition nor compliance with the UFLPA. *See id.* ¶ 59. After submitting its removal petition, Shenzhen Bitland twice offered to meet with FLETF staff and answer any questions FLETF had. *Id.* ¶¶ 59-60. FLETF informed counsel on January 3, 2025, that it did not have any questions for Hefei Bitland. *Id.* ¶ 61. Because a "listening session" without questions would not advance the removal decision, Shenzhen Bitland informed FLETF that it would forgo the meeting to avoid further delay. *Id.*

Despite repeated outreach, FLETF took no meaningful action for seven months. When it finally engaged, FLETF repeatedly requested information that Shenzhen Bitland had already provided in its initial submission, sought information unrelated to the UFLPA Entity List

designation criteria, and agreed to meet with Shenzhen Bitland to discuss the petition, only to ask no questions and refuse to respond to any questions Shenzhen Bitland posed. *Id.* ¶¶ 65-74.[1] In other instances, FLETF simply ignored Shenzhen Bitland's outreach altogether. *Id.* ¶¶ 59-64. Not until Shenzhen Bitland raised the prospect of litigation did FLETF even appear interested in engaging with Shenzhen Bitland in good faith. *Id.* ¶¶ 68, 72. Only now, after Shenzhen Bitland filed this suit, has FLETF represented that it is purportedly "making substantial progress" and "anticipates issuing a decision by the end of this calendar year." Mot. at 3, 23. That representation is no more definitive than the similar statements FLETF has made over the last two years, none of which resulted in action. *See* Compl. ¶ 9.

D. FLETF Updates the UFLPA Entity List, But Does Not Remove Hefei Bitland, Causing Ongoing Harm to Shenzhen Bitland.

Meanwhile, as Shenzhen Bitland continued to seek FLETF's adjudication of its request, FLETF issued the statutorily required

---

[1] The Complaint inadvertently includes two paragraphs designated as paragraph 65. This citation is to the second paragraph designated as paragraph 65, which is the first paragraph of Part VI of the Factual Allegations on page 19 of the Complaint.

update to the UFLPA Strategy. *See* U.S. Dep't of Homeland Sec., *Report to Congress, 2025 Updates to the Strategy to Prevent the Importation of Goods Mined, Produced, or Manufactured with Forced Labor in the People's Republic of China* (Aug. 19, 2025), https://www.dhs.gov/sites/default/files/2025-08/25_0819_plcy_uflpa-strategy-2025-update-508.pdf (the "2025 UFLPA Strategy"). The 2025 UFLPA Strategy did not remove Hefei Bitland from the UFLPA Entity List and instead continued to include Hefei Bitland as an entity listed pursuant to UFLPA section 2(d)(2)(B). *Id.* at 27. Hefei Bitland's inclusion in the 2025 UFLPA Strategy is irreconcilable with the fact that Hefei Bitland was defunct prior to its designation and deregistered on December 12, 2022.

FLETF's failure to resolve Shenzhen Bitland's petition continues to harm Shenzhen Bitland's current and future business opportunities. Shenzhen Bitland's customers and business partners view doing business with it as a regulatory and reputational risk—even though Shenzhen Bitland is not on the UFLPA Entity List—merely because Hefei Bitland is. Compl. ¶ 52. For instance, Shenzhen Bitland has lost two substantial business opportunities with leading global technology

companies as a direct result of Hefei Bitland's continued inclusion on the UFLPA Entity List. *Id.* ¶¶ 82-84; Cai Decl. ¶¶ 7-8, 10-23.

E. Failing to Obtain a Decision on Its Petition, Shenzhen Bitland Initiates the Present Action.

Shenzhen Bitland patiently attempted to work with FLETF to secure a decision on its petition for removal, but it cannot continue to suffer losses due to FLETF's apparent lack of interest in resolving its petition.

Accordingly, Shenzhen Bitland filed this suit asking the Court to declare FLETF's failure to remove Hefei Bitland from the UFLPA Entity List unlawful. Shenzhen Bitland requests that the Court vacate or set aside FLETF's designation of Hefei Bitland on the UFLPA Entity List or, in the alternative, remand this matter to FLETF with instructions to remove Hefei Bitland from the UFLPA Entity List.

## STANDARD OF REVIEW

In response to a challenge to the Court's subject matter jurisdiction, a plaintiff need only establish by a preponderance of the evidence that jurisdiction is proper. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988). In deciding a Rule 12(b)(1) motion to dismiss that does not challenge the factual basis for the

complainant's allegations, "the court assumes all factual allegations to be true and draws all inferences in the claimant's favor." *Houston Shutters LLC v. United States*, 816 F. Supp. 3d 1349, 1351 (CIT 2026) (citing *Henke v. United States*, 60 F.3d 795, 797 (Fed. Cir. 1995)). Where a motion to dismiss challenges the veracity of a plaintiff's jurisdictional facts, the court may consider evidence extrinsic to the pleadings. *See Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993) ("In establishing the predicate jurisdictional facts, a court is not restricted to the face of the pleadings, but may review evidence extrinsic to the pleadings.").[2]

When considering a CIT Rule 12(b)(6) motion for failure to state a claim, the court must accept all well-pled allegations in the complaint as true and construe those allegations in the light most favorable to the plaintiff. *See Capella Sales & Servs. Ltd. v. United States*, 878 F.3d 1329, 1333 (Fed. Cir. 2018). In order to survive dismissal, a complaint

---

[2] The Government asserts that the Court may consider its factual claims contesting the allegations in the complaint. Mot. at 5-7, 10-11, 15-19. To the extent the Court does so, it may also rely on the Cai Declaration. *Cedars-Sinai Med. Ctr.*, 11 F.3d at 1583–84. In any event, the complaint's allegations alone establish standing.

need only "contain sufficient facts, accepted as true, to 'state a claim to relief that is plausible on its face' . . . 'allow[ing] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Boaz Hous. Auth. v. United States*, 994 F.3d 1359, 1370 (Fed. Cir. 2021) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

## ARGUMENT

### A. Shenzhen Bitland Has Standing to Bring Its Claims.

Shenzhen Bitland's allegations are more than sufficient to establish standing to challenge Hefei Bitland's continued inclusion on the UFLPA Entity List. To establish Article III standing, a plaintiff must demonstrate (1) an injury-in-fact that is "concrete and particularized" and "actual or imminent"; (2) that the injury is fairly traceable to the challenged action of the defendant; and (3) that it is likely that the injury will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). Each element is satisfied here. The Complaint plausibly alleges ongoing economic, reputational, and procedural injuries resulting directly from the Government's challenged actions and omissions. To the extent required,

the sworn declaration of Shenzhen Bitland's President, Penghui Cai, supplies further evidentiary support for each. *See* Ex. A.

1. Shenzhen Bitland has suffered injuries-in-fact.

To establish injury-in-fact, a plaintiff need only demonstrate a concrete and particularized "invasion of a legally protected interest" that is actual or imminent, rather than conjectural or hypothetical. *Lujan*, 504 U.S. at 560. On a motion to dismiss, "general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Id.* at 561 (citation modified).

Future harms can satisfy Article III where the threatened injury is "certainly impending" or there exists a "substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (citation modified) (quoting *Clapper v. Amnesty International USA*, 568 U.S. 398, 414 n.5 (2013)). "Injury-in-fact is not Mount Everest." *Canadian Lumber Trade Alliance v. United States*, 517 F.3d 1319, 1333 (Fed. Cir. 2008) (quoting *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d 286, 294 (3d Cir. 2005)). As the Federal Circuit has

explained, the purpose of the injury-in-fact requirement is "to ensure that the plaintiffs have a stake in the fight and will therefore diligently prosecute the case . . . while, at the same time, ensuring that the claim is not abstract or conjectural so that resolution by the judiciary is both manageable and proper." *Id.* (citation omitted).

The Government dismisses Shenzhen Bitland's injuries as "speculative" and as resting on "vague allegations regarding two past examples" of economic harm. Mot. at 12-13. That description ignores the facts alleged in the Complaint. Shenzhen Bitland alleges specific, ongoing harm: lost opportunities with two identified global technology customers, both of which named the pending UFLPA listing as the sole barrier to further business; continuing reputational damage from being publicly associated with forced labor; and a procedural injury caused by two years of agency delay. Compl. ¶¶ 52, 79, 82-88. Each of these is concrete, each is continuing, and each is independently sufficient to establish injury-in-fact.

a. Economic and Reputational Injury

The Government contends that Shenzhen Bitland has not alleged an imminent economic injury, offering only "vague allegations

regarding two past examples" without saying when they occurred or whether they continue. Mot. at 13. The Complaint says otherwise. It alleges that Hefei Bitland's continued inclusion on the UFLPA Entity List has already had a significantly detrimental effect on its business, including the loss of two substantial business opportunities with major technology companies, and that both customers identified the listing—and the corresponding uncertainty around the listing—as the sole barrier to further business. Compl. ¶¶ 82-84. Those allegations go well beyond the "general factual allegations of injury" that suffice at the pleading stage, *Lujan*, 504 U.S. at 561, and the Government offers no facts to contradict them.

To the extent the Court looks beyond the pleadings (and it need not), the sworn declaration of Mr. Cai, which is based on his personal knowledge and review of business records, supplies even further support. Cai Decl. ¶¶ 10-23. After Hefei Bitland was removed from the BIS Entity List, Company A, one of the largest personal computer companies in the world, Compl. ¶ 82, approached Shenzhen Bitland on a new product development project, and Shenzhen Bitland submitted 35 proposals over five months. Cai Decl. ¶¶ 10-11. Company A was

satisfied with the work but would not move to mass production, citing internal regulatory requirements and concern that Bitland-made products would be detained or excluded from the United States. *Id.* ¶ 12. Company A then asked the question that frames this case: "[s]o once the customs list issue is resolved, there are no other obstacles, right?" Shenzhen Bitland confirmed there were none. *Id.* ¶ 14. The "customs list" meant the UFLPA Entity List. *Id.* ¶¶ 24-25. Company B, a major Taiwan-based personal computer manufacturer, also declined to award a contract, "citing the UFLPA Entity List designation as the decisive barrier." Compl. ¶ 83; Cai Decl. ¶ 18. These injuries are specific and concrete.

And the injury is neither confined to the past nor static. *See FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 381 (2024). Both customers identify the listing as the barrier not only to awards already lost, but to future ones. Compl. ¶ 84; Cai Decl. ¶ 28. The dates confirm it. Company A's project evaluation ran from April through October 2025; in September 2025, Company A tied the listing to its product planning for fiscal years 2026 and 2027; and in March 2026, it asked again whether Bitland was still on the list. Cai Decl. ¶¶ 10-11, 13-17. Company B

sought quotations and proposals for its 2026 and 2027 sourcing cycles throughout 2025, pressed for a removal date in October 2025, and scheduled further discussions for January 2026. *Id.* ¶¶ 19-23. These are live relationships with identified procurement cycles on the horizon, and with each cycle Shenzhen Bitland risks losing more business to suppliers that do not carry the same perceived risk. *Id.* ¶¶ 8, 30. Nor is the harm confined to two customers. Shenzhen Bitland and its affiliates once exported to 180 countries; today, they export to only two. Compl. ¶ 86; Cai Decl. ¶ 8. Lost business on that scale is precisely the kind of "traditional tangible . . . monetary harm[]" that "readily qualif[ies] as [a] concrete injur[y] under Article III." *Luca McDermott Catena Gift Trust v. Fructuoso-Hobbs SL*, 102 F.4th 1314, 1323 (Fed. Cir. 2024) (internal quotation marks omitted).

Shenzhen Bitland has likewise alleged a concrete reputational injury. "Reputational harms, as a general matter, are classic Article III injuries." *Bost v. Illinois State Bd. of Elections*, 607 U.S. 71, 78 (2026) (internal quotation marks omitted); *see also Shukh v. Seagate Tech., LLC*, 803 F.3d 659, 663 (Fed. Cir. 2015) ("[C]oncrete and particularized reputational injury can give rise to Article III standing."). By continuing

to list Hefei Bitland, a long-defunct company, FLETF tells the marketplace that Shenzhen Bitland is associated with forced labor. The Complaint alleges that "Shenzhen Bitland's customers and business partners view doing business with Shenzhen Bitland as a regulatory and reputational risk even though Shenzhen Bitland was not on the UFLPA Entity List or otherwise accused of wrongdoing." Compl. ¶ 52. Mr. Cai confirms that customers continue to associate Shenzhen Bitland with its former subsidiary and the risks associated with the UFLPA listing, and that customer discussions repeatedly return to whether Bitland remains on a U.S. list and can supply the U.S. market. Cai Decl. ¶¶ 8, 29, 34. That stigma has damaged Shenzhen Bitland's standing in the marketplace and impaired its ability to maintain and develop commercial relationships.

2. Shenzhen Bitland's injury is traceable to the Government's failure to act.

As the Court of International Trade recently explained, "[i]ndirect injuries, those caused in part by third parties, are sufficient for standing purposes so long as the injury is fairly traceable to defendants' conduct." *Hoshine Silicon (Jia Xing) Industry Co., Ltd. v. United States*, 780 F. Supp. 3d 1328, 1335 (CIT 2025) (citing *Vill. of Arlington Heights*

*v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261 (1977)). Article III does not require a plaintiff to identify each customer that will decline to do business with it or prove the precise economic losses that will result in order to establish traceability; it requires only that the challenged government action predictably causes the alleged injury. *See All. for Hippocratic Med.*, 602 U.S. at 382 (requiring that a complaint "establish that the plaintiff 's injury likely was caused or *likely will be caused* by the defendant's conduct" (emphasis added)).

Shenzhen Bitland easily satisfies this standard. The Government argues that Shenzhen Bitland cannot establish traceability because it relies on speculation that "unidentified hypothetical future customers" may react to Hefei Bitland's continued inclusion on the UFLPA Entity List in a manner that causes Shenzhen Bitland economic harm. Mot. at 14. But this argument disregards the Complaint's factual allegations reflecting how its customers have reacted to the continued listing of Hefei Bitland and fails to acknowledge that these accounts of customer behavior are the predictable results of FLETF's continued failure to remove Hefei Bitland from the UFLPA Entity List.

Shenzhen Bitland does not "rely on speculation about the unfettered choices" of third parties, as the Government contends. Mot. at 14 (quoting *All. for Hippocratic Med.*, 602 U.S. at 383). To the contrary, the Complaint specifically alleges that two customers expressly stated that FLETF's failure to remove Hefei Bitland from the UFLPA Entity List is the *sole barrier* to doing business with Shenzhen Bitland. Compl. ¶ 84. The Complaint further alleges that this feedback came from customers with specific contracting opportunities that Shenzhen Bitland pursued and lost because of Hefei Bitland's continued designation. *Id.* ¶¶ 82-83. These are not "hypothetical future customers;" they are specific, existing commercial counterparties whose reactions have already occurred. The Cai Declaration provides further support for those reactions, including Company A's question whether "once the customs list issue is resolved, there are no other obstacles," Cai Decl. ¶ 14, and both customers' identification of the listing as the sole barrier to production awards for the U.S. market. *Id.* ¶ 28.

Nor do the actions of third-party decisionmakers break the causal link between Shenzhen Bitland's injuries and the Government's failure to resolve the petition. "A causation chain does not fail simply because

it has several 'links,' provided those links are 'not hypothetical or tenuous' and remain 'plausib[le].'" *Maya v. Centex Corp.*, 658 F.3d 1060, 1070 (9th Cir. 2011) (quoting *Nat'l Audubon Soc'y, Inc. v. Davis*, 307 F.3d 835, 849 (9th Cir. 2002)). What matters is not the "length of the chain of causation," but rather the "plausibility of the links that comprise the chain." *Autolog Corp. v. Regan*, 731 F.2d 25, 31 (D.C. Cir. 1984) (quoting *Public Citizen v. Lockheed Aircraft Corp.*, 565 F.2d 708, 717 n.31 (D.C. Cir. 1977)). Here, the negative reactions of market participants are not only foreseeable; they are the *intended* consequences of the Government's actions.

The Government has stated that the UFLPA Entity List exists to prevent products "tainted" by Uyghur forced labor from entering the United States and to "hold[] accountable entities involved in such practices." Press Statement, U.S. Dep't of State, *Additions to the Uyghur Forced Labor Prevention Act Entity List* (July 31, 2026), https://www.state.gov/releases/office-of-the-spokesman/2026/07/additions-to-the-uyghur-forced-labor-prevention-act-entity-list. By design, inclusion on the UFLPA Entity List communicates to the marketplace that the United States Government

has identified an entity as connected to forced labor. It is entirely foreseeable, then, that commercial counterparties will avoid doing business with entities associated with such a designation. The Government's suggestion that market participants may simply disregard the UFLPA Entity List is supported by "neither logic nor intuition," *California v. Texas*, 593 U.S. 659, 676 (2021), and ignores both the conduct of actual customers, Compl. ¶¶ 82-84, and the concerns they have expressly communicated to Shenzhen Bitland, Cai Decl. ¶¶ 12-17, 20-23. These customers reacted exactly as one would expect. Far from speculative, hypothetical, or attenuated, their reactions are the logical—and intended—result of the designation.

The Government's reliance on the fact that Hefei Bitland has been defunct for nearly four years cuts the other way. *See* Mot. at 14-15. It is precisely because FLETF continues to list a company that ceased operations years ago that customers still ask, in 2025 and 2026, about the status of the listing. Cai Decl. ¶¶ 13-17, 23. The stigma persists not because of anything Hefei Bitland is doing, but because the Government keeps a defunct company on the UFLPA Entity List.

The Government's attempt to blame these injuries on the earlier BIS listing or the 2020 WRO fares no better. *See* Mot. at 15-16, 18-19. The Complaint alleges specifically that customers declined to do business with Shenzhen Bitland because of the UFLPA listing, and that allegation must be accepted as true. *See* Compl. ¶¶ 82-84. The Government offers only conjecture in response. But even if the Court needed to look further, the Cai Declaration reinforces Plaintiff's pleading and specifically forecloses Defendants' speculation.

As to the BIS listing, Company A and Company B re-engaged with Shenzhen Bitland *after* BIS removed Hefei Bitland from its Entity List—proof that the BIS listing was no longer the obstacle. Cai Decl. ¶¶ 7, 10, 18; Compl. ¶¶ 81-84. As to the WRO, the Government's own source undermines its theory: CBP's WRO dashboard, on which the Motion relies, states that enforcement of the Hefei Bitland WRO has been "superseded by enforcement of [the] UFLPA rebuttable presumption." Mot. at 6-7. By CBP's own account, then, the customers' fear of detention is a fear of the UFLPA presumption. Indeed, no Company A or Company B representative has ever raised the WRO as a concern separate from the UFLPA listing. Cai Decl. ¶ 26. And the

customers asked specifically about removal from the list that remained after the BIS delisting—the list subject to the multiagency FLETF vote that Shenzhen Bitland's representatives described. *Id.* ¶¶ 14-17, 21, 23-25. The Court should not credit the Government's speculation over specific allegations and first-hand evidence.

Moreover, even if the WRO could influence whether a customer works with Shenzhen Bitland, a plaintiff "need not eliminate any other contributing causes [of its injuries] to establish its standing." *Barnum Timber Co. v. U.S. EPA*, 633 F.3d 894, 901 (9th Cir. 2011); *see also Sywula v. Teleport Mobility, Inc.*, 652 F. Supp. 3d 1195, 1222 (S.D. Cal. 2023) ("'[O]ther factors may also cause' the injury-in-fact upon which a plaintiff predicates his or her standing, but if 'the link between the [defendant's challenged action] and [the alleged injury] is not tenuous or abstract,' those extraneous factors do not break the causal connection." (quoting *Barnum Timber*, 633 F.3d at 901)). The Government cannot defeat Shenzhen Bitland's traceability allegations by asking the Court to simply disregard the Complaint's plausible—and supported—factual allegations in favor of its own speculation about what could possibly motivate Shenzhen Bitland's customers.

That leaves the Government's claim that crediting Shenzhen Bitland's injury relies upon a "bridge too far" of three inferences: that Shenzhen Bitland will have similar business opportunities in the future, that customers will continue to cite Hefei Bitland, and that their decisions will turn on the UFLPA listing rather than the WRO. Mot. at 15-16 (citing *Food & Water Watch, Inc. v. Vilsack*, 808 F.3d 905, 913 (D.C. Cir. 2015)). The Complaint plausibly pleads each supposed inference as fact. It alleges that both customers have repeatedly inquired about the status of the removal request—confirming continuing interest and future opportunities; that both continue to cite the listing; and that both have identified the UFLPA listing as the *sole* barrier to awarding Shenzhen Bitland business. Compl. ¶¶ 82-84. Those allegations must be accepted as true, and they alone defeat the Government's argument.

Again, the Cai Declaration only confirms the point: the opportunities exist now, in identified procurement cycles, Cai Decl. ¶¶ 14-15, 19-23; the customers are still citing the listing, *id.* ¶¶ 17, 23, 28; and the listing, not the superseded WRO, is the barrier they identify, *id.* ¶¶ 14, 18, 24-25. The same is true of Shenzhen Bitland's reputational

injury, which the Complaint ties to the same listing and the same customer reactions, Compl. ¶ 52, and which Mr. Cai corroborates, Cai Decl. ¶¶ 8, 34.

3. Shenzhen Bitland's injury is redressable by a favorable decision.

Shenzhen Bitland also satisfies the redressability requirement. A plaintiff need not demonstrate with certainty that a favorable decision will redress its injury. *See Teton Historic Aviation Found. v. U.S. Dep't of Defense*, 785 F.3d 719, 726 (D.C. Cir. 2015). Rather, Article III requires only a substantial likelihood that the requested relief will remedy the alleged injury. *Lujan*, 504 U.S. at 561.

Here, Shenzhen Bitland has specifically alleged that Hefei Bitland's inclusion on the UFLPA Entity List is the reason it has lost business opportunities, and Mr. Cai's declaration confirms that. Compl. ¶¶ 82-84; Cai Decl. ¶¶ 12, 18, 28. As explained in the Complaint, Shenzhen Bitland has strong research and development capabilities and manufacturing efficiencies, and it has every reason to believe that its export business will return to past levels if Hefei Bitland is removed from the UFLPA Entity List. Compl. ¶ 87; *see also* Cai Decl. ¶ 31. This expectation is not wishful thinking; it is grounded in Shenzhen

Bitland's actual conversations with customers. *Id.* ¶¶ 82-84. Company A asked whether, once the listing was resolved, any other obstacle would remain—and was told none would. Cai Decl. ¶ 14. Company B pressed for a removal date and asked to be notified immediately of any development. *Id.* ¶ 23. Those customers have themselves identified removal as the event that would unlock renewed production business. *Id.* ¶¶ 28, 30-31; *see also* Compl. ¶ 84. A favorable ruling would remove the very obstacle customers have identified, allowing Shenzhen Bitland to compete for and obtain business in forthcoming procurement cycles. That is more than sufficient to satisfy Article III's redressability requirement.

The Government's remaining redressability arguments fail. First, relying on *Doc Society v. Rubio*, 141 F.4th 1273, 1278 (D.C. Cir. 2025), the Government contends that the WRO would hold Shenzhen Bitland's injuries in place even if Hefei Bitland were delisted. Mot. at 18-19. But as shown above, CBP has itself stated that WRO enforcement was superseded by the UFLPA presumption, *id.* at 6-7, and the customers have identified the UFLPA listing as the sole barrier, Compl. ¶ 84; Cai Decl. ¶ 28. The Government's reliance on CBP's 2020 announcement

that information "reasonably indicates" forced labor at Hefei Bitland, Mot. at 19, changes nothing: that preliminary finding concerned a facility that shut down months later, and, as Plaintiff has alleged, customers have not cited it—they have cited the UFLPA listing. Compl. ¶¶ 82-84; Cai Decl. ¶ 26. Whether some residual effect of the WRO might persist is, at most, a factual dispute that cannot be resolved against Shenzhen Bitland on a motion to dismiss. And a plaintiff need only show that relief would redress its injury in part; it need not show that a favorable decision would relieve every injury. *See Massachusetts v. EPA*, 549 U.S. 497, 525-26 (2007).

Second, the Government asserts that the Complaint does not explain how relief would redress reputational harm. Mot. at 17, 19. The answer is straightforward (and pled): the reputational harm flows from the Government's ongoing public association of Shenzhen Bitland with a listed entity, Compl. ¶¶ 52, 88, and removing that designation would provide customers with an official resolution of the very listing they have repeatedly raised. Cai Decl. ¶¶ 28, 33.

4. Shenzhen Bitland has standing to vindicate its procedural injury.

Shenzhen Bitland has also suffered a cognizable procedural injury. Although a bare procedural violation may be insufficient to confer standing, “it is sufficient where that procedural harm results in other concrete harms.” *Invenergy Renewables LLC v. United States*, 422 F. Supp. 3d 1255, 1272 (CIT 2019). In *Gilda Industries, Inc. v. United States*, 446 F.3d 1271 (Fed. Cir. 2006), the Federal Circuit held that the Government’s failure to conduct a required review injured the plaintiff because it deprived the plaintiff “of at least an opportunity” to obtain favorable agency action. *Id.* at 1279. That is so “even where there exists the possibility that the agency’s final decision taken in accordance with the proper procedures may not be in plaintiff’s favor.” *Invenergy*, 422 F. Supp. 3d at 1272 (citing *Gilda*, 446 F.3d at 1279).

The Government’s contrary arguments fail. First, the Government invokes the rule that “[o]nly a person who has been accorded a procedural right to protect his concrete interests can assert that right without meeting all the normal standards for redressability and immediacy.” Mot. at 20 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 496 (2009) (citation modified)). But FLETF did accord

Shenzhen Bitland such a right. Shenzhen Bitland invoked FLETF's removal request process on November 18, 2024, to protect its concrete commercial interests. Compl. ¶ 59. Under the auspices of that very process, Defendants sought and received information from Shenzhen Bitland about its removal request and have acknowledged that they are making progress on the request. *Id.* ¶¶ 62, 65,[3] 68, 69. Unlike the *Summers* plaintiffs, who challenged regulations untethered to any particular site or activity, *see* 555 U.S. at 491, Shenzhen Bitland seeks to vindicate a procedure that governs its own petition and directly affects its own customer relationships. In any event, Shenzhen Bitland does not need the relaxed standard: as shown above, its injuries independently satisfy every ordinary element of standing. *See* Sections IV.A.1-3, *supra*.

Second, the Government argues that Shenzhen Bitland "must still demonstrate the causal relationship between the final agency action and the alleged injuries." Mot. at 20 (quoting *Ctr. for Law & Educ. v.*

---

[3] This citation is to the second paragraph designated as paragraph 65, which is the first paragraph of Part VI of the Factual Allegations on page 19 of the Complaint.

*Dep't of Educ.*, 396 F.3d 1152, 1160 (D.C. Cir. 2005)). It has. FLETF's failure to act on the petition keeps Hefei Bitland on the UFLPA Entity List, and the listing—and corresponding uncertainty—is what customers, including Company A and Company B, have identified as the sole barrier to awarding Shenzhen Bitland production business. Compl. ¶¶ 82-84; Cai Decl. ¶¶ 14, 18, 28. The causal chain runs directly from FLETF's delay, to the continued listing, to the lost business—the same chain that establishes traceability for Shenzhen Bitland's economic and reputational injuries. *See* Section IV.A.2, *supra*.

Third, the Government repeats that Shenzhen Bitland has not alleged a prospective injury and that its injuries are neither traceable nor redressable, so it asserts only a "procedural right *in vacuo*." Mot. at 20-21 (quoting *Summers*, 555 U.S. at 496 (emphasis in original)). Each premise has already been refuted. Shenzhen Bitland's injuries are ongoing and prospective, tied to identified procurement cycles in 2026 and 2027, Cai Decl. ¶¶ 14-17, 19-23; they are traceable to the continued listing rather than to the superseded WRO, Mot. at 6-7; Cai Decl. ¶¶ 14, 24-26; and they are redressable because customers have identified removal as the event that would unlock renewed business, Cai Decl. ¶¶

14, 23, 28, 30. Nor is the reputational injury speculative: customers continue to ask whether Bitland remains on a U.S. list and can supply the U.S. market. *Id.* ¶¶ 28, 34. A procedural right that, if honored, would end the listing that is costing Shenzhen Bitland identified customers is the opposite of a right *in vacuo*. FLETF's delay has deprived Shenzhen Bitland of a meaningful opportunity to obtain relief from the listing—and of the chance to give customers, like Company A and Company B, a definitive answer before they made their sourcing decisions. Compl. ¶¶ 82-84; Cai Decl. ¶ 33. Under *Gilda* and *Invenergy*, that deprivation is a concrete injury regardless of how FLETF ultimately rules.

### B. The Complaint Adequately States Claims for Relief Under the APA.

After nearly two years of delay, the Government tells the Court that Shenzhen Bitland still has not waited long enough. While it does not dispute that Shenzhen Bitland has stated a claim for unreasonable delay in Count One,[4] it attacks the relief sought as improper. Nor does

---

[4] In arguing that Count Two challenges no final agency action, the Government cites cases suggesting that delays of several years may not be unreasonable. Mot. at 23-24. The Government does not invoke those cases to challenge the sufficiency of Count One, and they would not

the Government address Count One's allegations that FLETF violated the APA by failing to conclude the petition within a reasonable time and by failing to provide notice of, or a statement of the grounds for, any action on the petition. It also argues that Count Two fails because FLETF is "actively engaged" and "making substantial progress," so there is no final agency action. Mot. at 22-24. Neither argument has merit.

1. FLETF's failure to resolve Shenzhen Bitland's petition constitutes reviewable final agency action.

FLETF's failure to act on the petition, despite its statutory obligation to maintain the UFLPA Entity List in compliance with the UFLPA, is a constructive denial reviewable under section 706(2)(A). Compl. ¶¶ 95-103. "Agency action" includes a "failure to act," 5 U.S.C. § 551(13), and where "an agency is under an unequivocal statutory duty to act, failure so to act constitutes, in effect, an affirmative act that

---

support dismissal if it did. Whether delay is unreasonable under *Telecommunications Research & Action Center v. FCC*, 750 F.2d 70, 80 (D.C. Cir. 1984), is a fact-intensive inquiry, and the Complaint satisfies it: FLETF is bound by a statutory duty to maintain an accurate Entity List; it has held a complete record for nearly two years; Plaintiff is prejudiced by the continued forced-labor designation of a defunct entity; and the delay has caused ongoing harm to Shenzhen Bitland's business. *See* Section IV.B.1, *infra*.

triggers 'final agency action' review." *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001); *see also Florida Home Builders Ass'n v. Norton*, 496 F. Supp. 2d 1330, 1334-35 (M.D. Fla. 2007) (finding defendants' failure to conduct mandatory, nondiscretionary reviews as "agency action made reviewable" under the APA). As the D.C. Circuit has long held, "when administrative inaction has precisely the same impact on the rights of the parties as denial of relief, an agency cannot preclude judicial review by casting its decision in the form of inaction rather than in the form of an order denying relief." *Env't Def. Fund, Inc. v. Hardin*, 428 F.2d 1093, 1099 (D.C. Cir. 1970). Otherwise, agencies "could effectively prevent judicial review of their policy determinations by simply refusing to take final action." *Cobell*, 240 F.3d at 1095. That is precisely what Defendants seek to do here.

The Government responds that FLETF is "actively engaged" with the petition and "making substantial progress in resolving it," Mot. at 23, and invokes the "strong presumption" that judicial review is available only once agency action becomes final, *id.* at 24 (quoting *Bell v. New Jersey*, 461 U.S. 773, 778 (1983)). But the very case the Government cites recognizes that "inaction may represent effectively

final agency action that the agency has not frankly acknowledged." *Sierra Club v. Thomas*, 828 F.2d 783, 793 (D.C. Cir. 1987); *see also Vara v. DeVos*, 2020 WL 3489679, at *29-30 (D. Mass. June 5, 2020) (describing this as "black letter law"). That is this case. Hefei Bitland—defunct even before its designation—remains listed to this day, and nearly two years after filing its petition, Shenzhen Bitland *still* has no substantive response from FLETF.

The Government insists that "[n]o allegation of the complaint contradicts" its characterization. Mot. at 23. The Complaint says otherwise:

- On November 18, 2024, Shenzhen Bitland filed a formal removal request with FLETF enclosing the BIS removal decision and hundreds of pages of independent, verifiable evidence confirming that Hefei Bitland was defunct, had ceased all operations years before the UFLPA took effect, and had never engaged in any conduct falling within UFLPA §§ 2(d)(2)(B)(ii) or (v). Shenzhen Bitland also offered to answer any questions from FLETF and meet with agency staff. Compl. ¶ 59.

- On December 11, 2024, FLETF said it expected to have questions "in the coming weeks," but none came during that time, and when Shenzhen Bitland asked on December 17, 2024, whether a meeting would assist the review, FLETF did not respond. *Id.* ¶ 60.

- On January 3, 2025, FLETF said it had "no questions for Hefei Bitland." FLETF would issue its first set of

questions on July 11, 2025, nearly eight months after Shenzhen Bitland filed its removal request. *Id.* ¶¶ 61, 65.[5]

- In the intervening time, Shenzhen Bitland sent eight follow-up communications to Defendants. FLETF responded only twice to inform Shenzhen Bitland that it was "deliberating" and once more to acknowledge receipt. *Id.* ¶¶ 62-65.[6]

- Shenzhen Bitland responded to FLETF's July 11, 2025 questions, even though the documentation provided with its petition eight months earlier already answered them. One month later, FLETF indicated that it had not been able to access the documents that Shenzhen Bitland provided. *Id.* ¶¶ 65-66.[7]

- FLETF held a meeting on September 4, 2025, in which it asked no questions about the removal request or Shenzhen Bitland's extensive record and did not allow Shenzhen Bitland to ask any of its own. *Id.* ¶ 67.

- Shenzhen Bitland continued to follow up with FLETF on October 8, November 18, and December 8, 2025, but received no response. *Id.* ¶ 68.

---

[5] This citation is to the second paragraph designated as paragraph 65, which is the first paragraph of Part VI of the Factual Allegations on page 19 of the Complaint.

[6] This citation is to the first paragraph designated as paragraph 65, which is the last paragraph of Part VI of the Factual Allegations on page 19 of the Complaint.

[7] This citation is to the second paragraph designated as paragraph 65, which is the first paragraph of Part VI of the Factual Allegations on page 19 of the Complaint.

After more than a year of attempting to work with FLETF to remove the defunct Hefei Bitland from the UFLPA Entity List, Shenzhen Bitland informed FLETF that it would seek relief through litigation. *Id.* The mention of litigation initially appeared to spur FLETF into action, but it proved to be a pretext for further delay. FLETF issued a second set of questions on December 22, 2025, but those questions did not concern Hefei Bitland's labor practices or the fact that it was no longer operating. *Id.* ¶¶ 68-69. On May 7, 2026, FLETF issued a third set of questions, which again sought information already provided or irrelevant to the UFLPA's statutory criteria. *Id.* ¶ 72. Only now, in response to the Complaint, has FLETF represented that it is "making substantial progress" and "anticipates issuing a decision by the end of this calendar year." Mot. at 3, 23. Shenzhen Bitland has thus alleged a clear pattern of conduct in which FLETF has delayed and stalled consideration of a nearly two-year-old petition.

The Government's remaining arguments fare no better. It notes that FLETF "received information from Bitland as recently as mere months ago," Mot. at 23, but only because FLETF kept issuing duplicative and irrelevant questions; an agency cannot reset the clock

on its own delay by re-requesting information it already has. Compl. ¶¶ 65-73;[8] *see also F.T.C. v. Bisaro*, 757 F. Supp. 2d 1, 7 (D.D.C. 2010) ("if it is clear that the agency already possesses the information it seeks, the court may find the agency is abusing its process by acting in bad faith or with an improper purpose."). It also claims Shenzhen Bitland "turned . . . down" an offer to meet in January 2025. Mot. at 9. But as the Complaint explains, FLETF made that offer while simultaneously stating that it had "no questions for Hefei Bitland," so a meeting would not have advanced the review—and FLETF had ignored Shenzhen Bitland's own offer to meet just weeks earlier. Compl. ¶ 61. On a motion to dismiss, the Complaint's account controls.

Finally, the Government's reliance on *Palakuru v. Renaud*, 521 F. Supp. 3d 46 (D.D.C. 2021), and *Yavari v. Pompeo*, 2019 WL 6720995 (C.D. Cal. Oct. 10, 2019), is misplaced. *See* Mot. at 23. Those immigration-visa cases involved high-volume adjudications and acknowledged queues. *See Palakuru*, 521 F. Supp. 3d at 52-53; *Yavari*,

---

[8] This citation is to the second paragraph designated as paragraph 65, which is the first paragraph of Part VI of the Factual Allegations on page 19 of the Complaint.

2019 WL 6720995, at *8. Whether delay is unreasonable is a fact-intensive inquiry that considers, among other things, the interests prejudiced by the delay. *See Telecomms. Rsch. & Action Ctr.*, 750 F.2d at 80. Here, FLETF is maintaining a forced-labor designation against an entity that, by the Government's own account, ceased operations years before the UFLPA took effect, Mot. at 5, while the listing inflicts ongoing commercial harm on Shenzhen Bitland, Compl. ¶¶ 13, 81-87; Cai Decl. ¶¶ 28, 31, 34.

The Government also contends that neither count supports an order vacating "the initial listing decision, which is not even challenged here." Mot. at 22. That mischaracterizes the Complaint. Shenzhen Bitland challenges FLETF's constructive denial of its removal petition, which has the effect of maintaining Hefei Bitland's designation—a designation FLETF carried forward without explanation in the 2025 UFLPA Strategy. Compl. ¶¶ 93-103. Because FLETF has an ongoing statutory obligation to keep the UFLPA Entity List accurate, its refusal to grant the petition is itself agency action subject to review, and vacatur of the resulting unlawful designation is the ordinary APA remedy for that action. *See* 5 U.S.C. § 706(2)(A).

2. After two years of delay, Shenzhen Bitland's claims are ripe for adjudication.

"A case is ripe if the 'issues are fit for judicial decision,' and if there is 'sufficient risk of suffering immediate hardship to warrant prompt adjudication.'" *Icon EV LLC v. United States*, 840 F. Supp. 3d 600, 605 (CIT 2026) (citing *Cedars-Sinai Med. Ctr.*, 11 F.3d at 1580-81). "A challenged agency action is fit for judicial decision if it is 'final,' i.e., if it 'marks the consummation of the agency's decisionmaking process,' and if it determines a party's rights or obligations or otherwise has legal consequences." *Id.* (quoting *Tokyo Kikai Seisakusho, Ltd. v. United States*, 529 F.3d 1352, 1362 (Fed. Cir. 2008)) (citation modified). For there to be sufficient hardship to warrant prompt adjudication, the impact of the decision must be "sufficiently direct and immediate as to render the issue appropriate for judicial review." *Id.* (quoting *Abbott Labs. v. Gardner*, 387 U.S. 136, 152 (1967)). Although "a possible financial loss" alone is not sufficient to show the required hardship, *Abbott Labs.*, 387 U.S. at 153, courts have often found that injuries sufficient to sustain Article III standing also satisfy the hardship prong of the ripeness test. *See, e.g.*, *Public Lands for the People, Inc. v. U.S. Dep't of Agric.*, 733 F. Supp. 2d 1172, 1190 (E.D. Cal. 2010) ("[W]here an

issue is fit for review, the ripeness doctrine imposes no independent 'hardship' requirement beyond the requirement of injury sufficient to convey Article III standing.") (citation omitted); *Nathan v. Alamo Heights Indep. Sch. Dist.*, 173 F.4th 576, 588 (5th Cir. 2026) ("[T]here is a fair amount of overlap between Article III standing requirements and the ripeness analysis." (citation omitted)).

The Government here argues that even if Shenzhen Bitland has stated a claim for relief under section 706(2)(A), "the Court should not review the merits of FLETF's forthcoming decision until the FLETF has provided its reasoning and the administrative record of its decision." Mot. at 25. It suggests that "[d]elaying review will avoid judicial interference with the pending administrative decision" and the Court should "await further factual development." *Id.* at 25, 27. But this argument misconstrues Shenzhen Bitland's claim for relief under section 706(2)(A).

Shenzhen Bitland is challenging FLETF's constructive denial of its petition resulting from FLETF's failure to act as the statute requires. A constructive-denial claim is, by nature, not a challenge to any "forthcoming decision" or activity by FLETF that would involve

"further factual development." *Id.* Rather, it is a challenge to what FLETF has already done (or, more aptly, not done) at the time of the Complaint. The relevant record for the constructive-denial claim is the one that existed when the Complaint was filed, not some promised future record.

The Government's remaining ripeness arguments fare no better. It contends that FLETF should have "the first chance to exercise [its] discretion" and "expertise." Mot. at 26 (quoting *McKart v. United States*, 395 U.S. 185, 194 (1969) and citing *FTC v. Standard Oil Co. of Cal.*, 449 U.S. 232, 242 (1980)). FLETF has had that chance for nearly two years, with a complete record in hand since November 2024. Compl. ¶¶ 59-73. Deference to agency expertise presupposes an agency exercising it—not one that has declined to act. Nor does the principle that APA review is confined to the administrative record, Mot. at 26, counsel delay: the record for a constructive-denial claim is the one FLETF had when it failed to act, and FLETF can produce it now. Finally, the Government assures the Court that FLETF "will either grant Shenzhen Bitland's request, mooting this case, or" issue a decision Shenzhen Bitland can challenge. *Id.* at 27. That is the same open-ended promise FLETF has

made, without result, throughout the past two years. *See, e.g.*, Compl. ¶ 9. Meanwhile, customers continue to allocate production in successive procurement cycles while Hefei Bitland remains listed. Cai Decl. ¶¶ 8, 15, 30. Indefinite deferral is itself the hardship.

Shenzhen Bitland has adequately alleged that FLETF's failure to remove Hefei Bitland for nearly two years, in derogation of its statutory obligation to accurately maintain the UFLPA Entity List, has resulted in the constructive denial of Shenzhen Bitland's petition. As described in Section IV.A.1 above, that failure has caused, and continues to cause, concrete harm to Shenzhen Bitland, including lost opportunities with Company A and Company B and the ongoing risk of losing production business in forthcoming procurement cycles. Compl. ¶¶ 82-88; Cai Decl. ¶¶ 14-15, 22-23, 30, 32.[9] That is precisely the "immediate and substantial impact" that defeats the Government's claim of no undue hardship. Mot. at 27. The constructive denial is final agency action that may be challenged under section 706(2)(A) and is fit for review. The

---

[9] Because the Government's hardship argument rests on its challenge to Shenzhen Bitland's injuries, Mot. at 27, the Court may, to the extent required, consider the Cai Declaration in resolving it. *See Cedars-Sinai Med. Ctr.*, 11 F.3d at 1583–84.

Court should reject the Government's attempt to repackage its standing and final-agency-action arguments into yet another challenge that disregards the well-pled allegations of the Complaint.

### 3. This Court is empowered to grant the relief Plaintiff seeks.

The Court should declare FLETF's failure to remove Hefei Bitland from the UFLPA Entity List unlawful and vacate FLETF's constructive denial of Shenzhen Bitland's petition. At minimum, the Court should declare FLETF's resolution of the petition unlawfully withheld and unreasonably delayed under section 706(1) of the APA. The Government does not contend that Shenzhen Bitland failed to plead a section 706(1) claim. It argues only that the Court cannot grant the relief sought in Count One because the Court may compel FLETF to act but may not prescribe how it must act. Mot. at 22 (citing *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 64 (2004)). That argument misapprehends both the law and the Complaint.

"Where an agency 'fails to take a discrete agency action that it is required to take,' the APA creates a private cause of action for a party aggrieved by that agency's unreasonable delay to compel such action." *Gonzalez v. Cuccinelli*, 985 F.3d 357, 366 (4th Cir. 2021) (citation

omitted). The plaintiff need only identify "a specific, unequivocal command to act and show that the government agency is violating that command." *Ramizi v. Blinken*, 745 F. Supp. 3d 244, 255 (E.D.N.C. 2024) (citation modified). The UFLPA supplies that command. FLETF may designate an entity only if it meets the criteria in clauses (i), (ii), (iv), or (v) of section 2(d)(2)(B); it must update the UFLPA Strategy, including the Entity List, at least annually, UFLPA § 2(e)(2); and it has committed to consider requests showing that an entity does not meet, or no longer meets, those criteria, 87 Fed. Reg. at 47,777-78. FLETF is thus statutorily required to act on the removal request to remove an entity when the facts do not, or no longer, support its designation, and it has no discretion to disregard those requirements.

Shenzhen Bitland has adequately alleged that FLETF is violating that command. The Complaint alleges that Hefei Bitland does not meet the statutory criteria for listing and that FLETF has possessed, since at least November 2024, information showing that Hefei Bitland is defunct and therefore improperly listed. Compl. ¶¶ 88, 92. FLETF has never explained how Hefei Bitland qualifies, nor has it produced the administrative record. *Id.* ¶ 9. The fully developed record will show that

Hefei Bitland—a company that ceased operations years before the UFLPA took effect—is incapable of meeting any of the statutory requirements. And to the extent FLETF relies on alleged pre-UFLPA conduct to justify the continued listing, it applies the statute retroactively, in violation of section 706(2). *See Ninestar*, 687 F. Supp. 3d at 1335-37.

At this stage, then, Shenzhen Bitland has plausibly alleged that the Court is empowered to direct Defendants to carry out their statutory obligations to update the UFLPA Entity List and remove Hefei Bitland. Where the law admits of only one lawful outcome, the Court may vacate the designation of Hefei Bitland or, at minimum, remand to FLETF with instructions to delist it. And a dispute over the precise form of relief is no basis to dismiss a well-pled claim in any event. The Complaint also requests "any further relief that this Court may deem just and proper," Compl. at 33, and the Court may, at the very least, compel FLETF to decide the petition by a date certain. *See Norton*, 542 U.S. at 64-65.

## LEAVE TO AMEND

If the Court determines that either count of the Complaint should be dismissed under CIT Rule 12(b)(1) or 12(b)(6), Shenzhen Bitland respectfully requests leave to amend. Under CIT Rule 15(a)(2), a court should freely give leave when justice so requires. "Generally, courts should allow repleading if the complaint gives any indication that a valid claim might be stated." *United States v. Greenlight Organic, Inc.*, 419 F. Supp. 3d 1298, 1306 (CIT 2019). Courts may deny leave for reasons such as futility, bad faith, undue delay, or undue prejudice to the opposing party. *Id.* None of those concerns is present here, and any perceived defect can be remedied. Shenzhen Bitland has diligently pursued this litigation, and amendment would neither unduly delay the case nor burden the Government.

## CONCLUSION

For the foregoing reasons, the Motion should be denied in its entirety.

DATED: November 13, 2026

/s/ Wendy Wysong
Wendy Wysong
Brian J. Fleming
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
Tel: (202) 429-8158
wwysong@steptoe.com
bfleming@steptoe.com

Michael G. Scavelli
STEPTOE LLP
1133 Avenue of the Americas
New York, NY 10036
Tel: (212) 506-3900
mscavelli@steptoe.com

## CERTIFICATION OF COMPLIANCE REGARDING WORD COUNT

The undersigned hereby certifies that this opposition complies with the 14,000-word limitation authorized by the Court's Chamber Procedures because it contains 9,883 words, excluding parts of the brief exempted from the word limitation. In preparing this certificate of compliance, I have relied upon the word count function of the Microsoft Word processing system used to prepare this brief.

/s/ Wendy Wysong
Wendy Wysong

## CERTIFICATION REGARDING GENERATIVE AI

Pursuant to Paragraph 6 of Judge Baker's Document Formatting and ECF Filing Requirements, the undersigned hereby certifies that generative artificial intelligence was used to assist in the preparation of Plaintiff's Opposition to Defendants' Motion to Dismiss. Specifically, Harvey AI and CoPilot were used as part of proofreading the entirety of the brief after it was initially drafted. Westlaw Edge was used to assist in researching case law. No confidential information or business proprietary information was disclosed to either program in connection with the preparation of this filing.

/s/ Wendy Wysong
Wendy Wysong